Judge Ewing
delivered the Opinion of the Court.
Smith, Meredith and Ellicott prosecuted a writ of forcible detainer against Willis White, and recovered a verdict before the magistrate. White traversed the inquisition, and, upon the instructions of the Circuit Court, obtained a verdict; and judgment having been rendered thereon, and a motion for a new trial overruled, the plaintiffs in the warrant have brought the case to this Court.
The plaintiffs read to the jury the judgment of the Circuit Court of the United States, in favor of the plaintiffs against the defendant, and the habere facias possessionem, and return of the deputy marshal thereon, in the following words: “Executed, June the 2d, 1834, by delivering possession of the premises occupied by defendant White, to Samuel Plummer, agent of the plaintiffs;” and proved by Price, the deputy marshal, that he, *377 on the day of the return, delivered possession of the premises in contest to Plummer, as' the agent of the plaintiff, in the following manner: he went into the house of White, with the process, and desired him and his family to go out; they went out into the yard, and he delivered the possession of the house to Plummer, as agent of the plaintiffs. He then went into the yard with Plummer, and delivered to him the possession of the residue of the premises. That White then took a lease from the plaintiffs, until the first day of December ensuing, and was restored to the possession. That the reason he did not throw out the goods of the defendant, when he had delivered possession of the house to Plummer, he said that he need not go further, as he had leased the place to White. The lease was then proven by him, and read to the jury.
He also proved, by Plummer, that he had been acting as the agent of the plaintiffs, in relation to the land in controversy, for fifteen or twenty years previous to the execution of the lease. That he was present on the premises on the day the lease bears date, and possession was delivered to him, as the agent of the plaintiffs, and he claimed and leased the same as such, to the defendant White.
That after the lease was out, he, as agent, called on White to deliver the possession to him. On the first interview, he asked time to make some arrangements for his family. On the second application, he refused to give up the possession to the plaintiffs, or any other person, and said he intended to hold the possession, and was at the defiance of the plaintiffs. And he had remained there ever since. That he had been appointed the agent for the plaintiffs, to superintend their lands in Kentucky, by Col. Morrison, who had died in Lexington about fifteen years ago. That he had seen and conversed with the plaintiffs, in Maryland, about forty-five years ago, and had not seen or conversed with them since. He had leased out their lands, and collected the rents, as their agent, but had not seen them or had any correspondence with them since his appointment.
He had taken the lease from White, demanded the pos *378 session, and sued out and prosecuted the warrant for the forcible detainer himself, without their special direction or knowledge.
Instructions.
A ha. fa. may Re duly executed without an actual removal of the def’l. and his effects from the land. If the defendant, acquiescing in the service of the writ, yields up the possession, and it is delivered to the pl’tf, or his agent, it is a good service of the writ—tho ’ the def’t, (with the pltf’s assent) still remains, with His effects, upon the land. But without such submission and acquiescence, on the part of the def’t, his actual removal will be necessary.
*378 That Robert Wickliffe had, as their attorney, obtained the judgment in the Federal Court, and had acted as their attorney for fifteen years.
Upon which evidence the Circuit Court, at the instance of the defendant, gave to the jury, among others, the following instructions:—
First. “ That if, at the time, and prior to the time of “ White’s giving the lease read in this case, Plummer “ falsely represented to him, that he was agent for the “ plaintiffs, and authorized by them to take the possession, when he was not so authorized, and had no authority from them to lease the premises, and by such “ false representations, induced White to give the lease “ read to the jury, that the lease is void, and the jury “ ought not to find for the plaintiffs.”
Second. “ That if the jury find that Plummer was “ the agent of the plaintiffs when the lease was executed, and that Price, the marshal, did not deliver possession in fact of any part of the premises in controversy to Plummer, except the house in which White “ lived, and that White was not turned out, in fact, of “•the residue of the premises, that the jury cannot find “ for the plaintiffs, more than the dwelling house.”
We cannot concur with the Circuit Court in the opinions expressed in those instructions.
The last instruction is based on the idea, that nothing less than a positive expulsion, in fact, of the defendant from the whole premises, will constitute a good execution of the writ. We cannot believe so. A defendant may surely yield obedience to the process of the Court, without being forcibly turned out, neck and heels. The object of the process is to obtain possession. If that be yielded up peaceably, or tacitly, or expressly acknowledged to be in the plaintiffs, and they or their agent accepted it, that is surely sufficient, without an expulsion in fact. The law requires nothing to be done that is useless or oppressive, when the ends of justice can be attained without it. Now, the proof goes clearly to *379 show, that White submitted to the process of the Court, and yielded up the possession to Plummer, acknowledged himself out, and entered, afterwards, under the title of the plaintiffs. Had he not done so, it might have been proper to remove him and his goods from the premises, in order to invest the plaintiffs with the complete possession and enjoyment thereof. But when he yields and takes possession under the title of the plaintiff, all the purposes of the law are answered, and it would be useless and oppressive to go further with the process.
If a ha. fa. be-executed by delivering the possession of the premises to any person as agent of the pl’tf, the possession will inure to his (pltf’s) benefit — even tho’ the agent had no authority to act as such: he cannot dispute the pltf’s title; having received the possession for him, he will hold as tenant at will under him; and the def’t in the ha. fa. or any other, receiving the possession from the agent, will hold it, as the agent held it as the pltf’s tenant; and if he disclaims that title, he may be a moved by warrant of forcible detainer.
Again: no other conclusion is deducible from the return of the marshal, and testimony in the cause, than that possession in fact was delivered; and any instruction based upon a contrary hypothesis, has no foundation in the proof to rest on.
The first instruction is equally erroneous.
It matters not whether Plummer was the duly authorized agent of the plaintiffs or not, or whether he imposed on the defendant by false representations as to his agency, or whether the lease is void or voidable, or not.
As above shown, Plummer was put into possession under the process of the Court, claiming to be the agent of the plaintiffs, and under their title. And the defendant obtained the possession from him, and entered under the same title.
Can either of them dispute the title of the plaintiffs, or controvert their right to the possession.
Had Plummer remained in possession, having acquired it as agent, or claiming to be such, he would have occupied as tenant at will, and be liable to be turned'out at the instance of the plaintiffs, upon his refusal to surrender the possession to them. He could not say that he was not agent, or controvert the terms upon which he obtained the possession. To allow him to do so, would be to allow him to take advantage of his own wrong.
White derived the possession from Plummer, acting as the agent of the plaintiffs, and could not stand upon better ground than he.
Plummer’s possession in fact, was delivered over to him, and he entered under the plaintiff’s title, claiming to *380 hold as their tenant. And in a proceeding by them against him, he cannot turn round, set up for himself, dispute the title of the plaintiffs, and the terms upon which he acquired the possession, and still hold on to it.
Grounds upon which an affirmance is claimed.
When the proceedings on the part of the pl’tf, are so erroneous, that they would not bar another action for the same cause, the judgment against him, whatever errors may have been committed to his prejudice, should be affirmed; but where it is otherwise, or where the point upon which the right depends, was decided erroneously,there must be a reversal.
*380 If the lease were void, he occupied as tenant at will, and owed allegiance to those under whose title he entered. And when he disclaimed holding under their title, and set them at defiance, he was liable to be turned out.
He cannot affirm the contract in part, and disaffirm it in part; or avoid the lease, and not surrender up the possession, acquired under it, no more than he who acquires possession of a horse or a negro under a fraudulent contract, can disaffirm the contract without restoring or tendering a restoration of the property acquired under it. Upon a disaffirmance, each party should be placed in statu quo.
A contrary doctrine, it is apparent, would work manifest injustice to the plaintiffs in this case. They recover a judgment; their process is exhausted in delivering possession to one who claims to be their agent; he enters, and leases to another in their names, and the lessee enters under the lease, and enjoys the profits to the full end of the term; and, when they seek to be restored, he attempts to avoid the lease, and still hold on to the possession. He cannot do so. The instruction, therefore, was misleading and erroneous.
But it is contended that the judgment is right upon the whole record, and should not be reversed:—
First. Because the warrant fixes no day on which the possession was detained, and is too vague and indefinite in the description of the property detained.
Second. Because this suit was instituted and carried on without the authority or direction of the plaintiffs.
And, thirdly, because Plummer was an interested witness; and if his testimony had been rejected, there would have been no testimony upon which to sustain a recovery.
We would first premise, it is not every case in which a point has been decided erroneously by the Circuit Court, against the successful party, that this Court will *381 refuse to reverse the judgment in his favor. When the proceedings are so erroneous, on the part of the plaintiff, that a judgment against him would not bar another action for the same cause, the judgment against him should be affirmed, although entirely erroneous on the point decided in his favor. But when it is otherwise, or when the point, upon which the right depends, was decided erroneously against the plaintiff, then the judgment should be reversed, and the Circuit Court directed to dismiss the action, or the case sent back for further proceedings. Lit. Sel. Cases, 148, Violett &c. vs. Stevens; 2 Lit. Rep. 266, Birney vs. Hann; 1 Bibb, 333. A different course of practice would be calculated to, take the plaintiff by surprise, and, between the two Courts, to deprive him of remedy, when the substantial justice of the case was on his side.
The form of a warrant in forcible detainer, given in the statute, is chiefly directory: it need not be literally copied; a substantial conformity is sufficient. As to the identification of the property detained, and the time when, — if reading the warrant to the def’t, will apprise him of the true character of the charge against him,with reasonable certainty, it will be sufficient in those respects.
First. The warrant, in our opinion, is sufficiently certain in the day, as well as in the description, of the premises detained. The form prescribed in the statute is only required to be substantially pursued, and was given more as directory to the justice than as an arbitrary form, to be strictly pursued by him.
It charges that the “defendant doth forcibly detain,” &c. which implies that he is, on the day the warrant bears date, guilty of the wrongful detention. And it describes the property as “one dwelling house and other out-houses and fields, lying on the south side of the Middle Fork of Kentucky river, it being a part of a tract of land of two thousand five hundred, patented to Crow and Adams, lying in Estill county; which were in the possession of said Smith, Meredith and Ellicott, on the first day of December, 1834.” The out-houses and fields charged to be detained, may, with reasonable certainty, be understood to be the out-houses and fields appurtenant to the dwelling house, and situated upon the tract described, and which were in the possession of the plaintiffs on the first day of December, 1834, (which was the day on which White’s lease expired,) and was a sufficient general description of the property intended, to apprize White of the claim set up against him, and put him upon his defence. All the statute requires, is a gen *382 eral description of the property detained, and that may be given without designating the number of houses or fields sought to be recovered.
The issue on a traverse, is whether the inquisition is true or not; and evidence to show that the warrant was sued out and carried on, without the pltf’s authority, is wholly inadmissible on the trial of that issue —the fact itself would be no reason for affirming a judg’t against the plaintiff.
The only interest that will exclude a witness, is a direct immediate interest in the event of the suit: a contingent, doubtful, interest goes merely to his credibility.
The party objecting to a witness as interested, must show the interest: so, upon an allegation that a witness might be responsible in consequence of having instituted the suit without authority, he who makes the objection must show that the witness acted without color of authority, to render him incompetent.
*382 The second ground assumed is equally untenable. The issue to be tried was, whether the inquisition was true or not. Upon this issue, any proof tending to show that the plaintiffs had not authorized the suit, was surely irrelevant and incompetent. And, though it were full and complete, it would not authorize the jury to find against the plaintiffs, on the merits.
If so, it would place it in the power of a defendant to surprise the plaintiff, by the introduction of evidence out of the issue, and which he may have no opportunity to counteract, and to defeat him in the most meritorious case. For we apprehend that a judgment against a plaintiff, upon an issue on the merits — whether he did or did not authorize the suit, especially if an attorney of the court, as in this case, appears and joins issue for him — would be a conclusive bar to any further proceedings on the same cause of action.
But, whether this would or would not be so, we are satisfied that the testimony was wholly irrelevant and inadmissible; and, when given, should have had no weight whatever with the jury. And, though it appears in the record, unobjected to by the counsel for the plaintiffs, it can form no proper ground for affirming the judgment erroneously obtained by the defendant.
In relation to the third ground, we would remark, that, to exclude a witness, as incompetent on the score of interest, his interest, in the event of the cause, should be direct and immediate, and not contingent or uncertain ; and should be clearly made out.
In doubtful cases, the objection should be permitted to go to their credit, rather than to their competency. And this is the course of modem decisions.
Now, if it were yielded, that the part which Plummer took in getting security, and in the prosecution of the suit, would render him responsible to the surety, or to the parties, in case he had no authority from the plaintiffs — it has not been made out clearly, to our satisfaction, that Plummer had no color of authority for the *383 part which he has taken. And the want of authority- must be satisfactorily shown, to render him incompetent.
The authority of a sub-agent—emanating, as it does, from the principal—is not affected by the death of the agent from whom he received Ilia appointment.
Where a party has acted for a long time, as an agent, with the knowledge of the principal, there is a strong presumption in favor of the authority.
He was appointed, by Col. Morrison, some twenty years ago, to superintend and manage the lands of the plaintiffs in Kentucky.
Whether Col. Morrison had authority from the plaintiffs to make such appointment, it is true, is not shown. Nor is it shown that he was not authorized to do so. And the defendant, who objects to the testimony, holds the affirmative, and must show the interest. To do which he must show the want of authority.
And if Morrison appointed him the agent, it may be and probably is true, that he had full power from the plaintiffs to make the selection. And if he had such authority, and made the appointment, we cannot admit that his death would revoke the power conferred, on Plummer. When appointed, his authority emanated from the plaintiffs, and remained in full force until.revoked by them.
The presumption that Morrison had authority to make the appointment, or against the idea of a want of authority, is strengthened by the consideration that Plummer has acted as their agent for more than twenty years, with the knowledge, and under the eye, of their attorney, and which scarcely, for so long a period, could have been unknown to the plaintiffs themselves. If known, their long acquiescence in, and recognition of, his acts, would raise strong grounds for an implication of authority.
The judgment of the Circuit Court is reversed, and cause remanded, that a new trial may be granted.