## MANCHESTER BANK *v.* WHITE.

Where the members of a corporation are made personally liable for the corporate debts in certain events, the liability is too uncertain and contingent to render a member who has assigned his stock incompetent as a witness for the corporation, unless it is shown that all the facts exist which the statute requires to render his liability fixed and certain.

A corporator who has assigned his stock is not rendered incompetent by any liability for costs of an action brought by the corporation. The liability for costs accrues by the rendition of the judgment.

Notice to an indorser of a bill, or note, will be sufficient if it is deposited in the post office in season for the mail of the next day after payment is refused, or notice is received by an indorsee.

Notice, dated September 26, 1851, that D. B. Kimball's acceptance for $682, indorsed by the party notified, and due that day, has been presented and payment refused, and that he was held answerable, is sufficient, unless it is shown that other acceptances exist, such that the acceptance referred to might be uncertain.

Notice by mail, addressed to an indorser at the town where he resides, is sufficient, though there is another post office in the town, near which the indorser resides, if that fact does not appear to be known to other parties.

ASSUMPSIT, to recover the amount of a note, signed by T. Chase, dated July 19, 1851, for $638,24, payable to Montgomery & Co., or order, in six months, at the Merchants Bank, Boston, and indorsed by said Montgomery & Co., and by this defendant; also of two drafts, one dated March 23, 1851, by Montgomery & Co. on D. B. Kimball for $682, payable to order of said Montgomery & Co. in six months, accepted by said Kimball, and indorsed by said Montgomery & Co. and by this defendant; and the other, dated May 23, 1851, drawn by Montgomery & Co. on the same Kimball, for $648, payable to order of this defendant, in six months, accepted by said Kimball and indorsed by this defendant.

This note and the drafts were discounted by the Bank for the defendant, and the money paid to him.

On the trial, the plaintiffs offered as a witness the cashier of the bank. On preliminary inquiry by the defendant, it

appeared that the capital stock of the bank was about $144,000 ; and that the witness, at the time of the commencement of this suit was, and ever since, till within a day or two, had been, a stockholder in the bank, but was not then. The defendant objected, that he was incompetent to testify on account of being, therefore, liable for the costs of this suit. But the court overruled the objection, and the witness was admitted to testify.

The note and drafts were indorsed by the bank, and sent to Boston for collection. At maturity they were respectively presented for payment by a notary public, and payment being refused, he on the same day forwarded by mail to the plaintiffs notices of such non-payment, enclosing similar notices for this defendant. The same were duly received by the plaintiffs on the next day, and by them the notices for the defendant were properly addressed to him at Deerfield, and on the same day put into the post office, to be forwarded to him by mail. But it appeared that notices would not in due course of mail reach the defendant so soon as if they had been sent to him by the notary directly from Boston. There was no evidence that the notary, or the bank in Boston, had any knowledge of the place of residence of the defendant. The defendant objected that, therefore, the notices were not in proper season, and so he was not liable. But the court overruled the objection.

One of the notices from the notary was as follows :

"*Boston, September* 26, 1851.

Mr. T. M. White—You are hereby notified that D. B. Kimball's acceptance, indorsed by you, for six hundred eighty two dollars, due this day, $682, has been presented by me for payment at the acceptor's place of business, which was refused, and that you are held answerable for the amount, with all legal costs, &c., in consequence of the non-payment thereof.

CHARLES HAYWARD,
Notary Public, 59 State Street."

That on the other draft was similar, and that on the Chase note also, except specifying it as " Tappan Chase's note, payable at the Merchant's Bank, Boston, indorsed by you," and alleging a presentment at that bank for payment. The defendant objected, that the notices were insufficient. But the court overruled the objection.

The cashier of the bank testified that he directed the notices to the defendant at Deerfield, where he understood and supposed that he resided.    But from other evidence offered on the trial, it appeared that the South Deerfield post office was near the defendant's residence, and the one at which his business by mail was usually done.    There was no evidence, however, that the officers of the bank had any knowledge of that fact.    This last post office is in the town of Deerfield, and about six miles from the post office called Deerfield, to which the notices were directed.    The defendant contended that, therefore, he was not liable in this action, but the court ruled otherwise.

A verdict was taken by consent for the plaintiff for the amount of the note and drafts, subject to the exceptions to the foregoing rulings of the court.

*Morrison, Fitch & Stanley*, for the plaintiffs.

*Cilley* and *D. Clark*, for the defendant.

BELL, J.    The witness was a member of the corporation, plaintiffs in the action, till within a short time before the trial, when he sold his stock, probably for the purpose of becoming a witness to facts, in relation to which no other person could testify.    The objection to his admission is founded upon the idea that as a stockholder in the bank, and member of the corporation, the witness was liable for the payment of all the debts and liabilities of the bank, incurred during the time he belonged to the corporation, and that this liability was not affected in any way by the sale of his interest.

Manchester Bank *v.* White.

The general principle of the law is, that stockholders and members of corporations are not liable for any of the debts of the corporation. The cases where a liability is specially imposed by statute are exceptional, and the party who alleges the liability is bound to show that circumstances exist which bring the witness within the provisions of the statutes which impose the liability.

The courts take notice that banks are of the class of corporations where a contingent personal liability is imposed upon the corporators, in case certain requisites are not complied with, as well as the nature and character of those requisites. But no evidence was offered that any facts exist in this case, which subject the stockholders to liability, and the court will not presume that they exist, without evidence. Upon the case as it appears, the ordinary presumption applies, that the stockholders are not liable personally, or individually, for the debts of the corporation.

If, however, such facts were shown as would render the stockholders of the corporation subject to a liability for its debts, we think the witness in this case would not be thereby rendered incompetent, first, because the action being brought by the corporation for the recovery of a debt claimed to be due to them, no judgment can be recovered against the corporation, except for costs, and as the liability on such judgment would first accrue on the rendition of the judgment, and after the witness had ceased to be a member of the corporation, he could in no event be liable; and second, because the interest which disqualifies a witness must be direct and certain; it is not enough if it is uncertain, remote or contingent. *Milldam Foundry* v. *Hovey*, 21 Pick. 456.

The general principle that an uncertain, remote and contingent interest, is not sufficient to exclude a witness, is recognized in many cases and elementary books, as 1 Phill. Ev. 121; 1 Cow. & Hill's Notes 130; 1 Greenl. Ev. §§ 390, 397; 2 Stark. Ev. 745; Arch. P. & Ev. 43; *Carter* v. *Pearce*, 1 D. & E. 163; *Clark* v. *Garmon*, Ry. & Moo. 31;

*Nowell* v. *Davis*, 5 B. & Ad. 368; *Phillips* v. *Bridge*, 11 Mass. Rep. 246; *Bank* v. *Knapp*, 3 Pick. 108; *Hawes* v. *Humphrey*, 9 Pick. 357; *Blake* v. *Irish*, 21 Maine Rep. (8 Shep.) 450; *Stewart* v. *Kip*, 5 Johns. 256; *M'Doughgall* v. *Neilson*, 2 Cow. 139; *Ten Eyek* v. *Bill*, 5 Wend. 55; *Schoulder* v. *Van Rensellair*, 9 Wend. 296; *Irvine* v. *Lumbermen's Bank*, 2 W. & S. 190; *Willings* v. *Consequa*, Pet. S. C. 301; *Smith* v. *White*, 5 Dana 382, &c.

The liability of the stockholder, in the cases limited by the statute, for the debts of the corporation, is in the nature of a conditional suretyship, a liability to pay the debts of the corporation in certain contingencies, if the corporation does not pay them. Now it has never been held that a surety is disqualified by his liability as such, to testify in relation to the claims of his principal against others, because a recovery by the principal would increase his means to pay and thus to exonerate the surety. *Carter* v. *Pierce*, 1 D. & E. 163; *Ely* v. *Forward*, 7 Mass. Rep. 26; *Luke* v. *Leland*, 6 Cush. 259; *Riggins* v. *Brown*, 12 Geo. Rep. 271; *Ten Eyek* v. *Bill*, 5 Wend. 55; *Willings* v. *Consequa*, Pet. S. C. 301.

If by the death, bankruptcy or insolvency of the principal, the fund for the payment of the debts is made certain, and it is shown to be insufficient, the surety would be held incompetent in such a case, because no one can by his testimony increase or protect the fund which he is entitled to share. *Craig* v. *Cundell*, 1 Camp. 381; *Carpenter* v. *Creal*, 6 Hill 556; *Flinro* v. *Chase*, 4 Denio. 85; *Duel* v. *Fisher*, 4 Denio. 516; *Stebbins* v. *Sackett*, 5 Conn. Rep. 258; *Carr* v. *Hilton*, 1 Curt. C. C. 390.

But if the fund appears to be ample, the competency of the witness is not affected, because it then becomes uncertain and contingent whether his interest will be affected by his testimony. *Nowell* v. *Davis*, 5 B. & Ad. 368; *Paull* v. *Brown*, 6 Esp. 34; *Duel* v. *Fisher*, 4 Denio. 516; *Boyer* v. *Kendell*, 14 S. & R. 178.

And where nothing, or only doubtful evidence appears, as to the sufficiency of the fund, no deficiency will be presumed for the purpose of excluding the witness.　4 Denio 516.

Where the principal debtor is living, and has the control of his own funds, it is, of course, entirely contingent and uncertain whether the interests of a surety can be affected by his testimony; and his competency is not affected until he has acquired some right or lien upon the fund in dispute. *Peyton* v. *Hallett*, 1 Caines 363; *Stewart* v. *Kip*, 5 Johns. 256; *Ten Eyek* v. *Bill*, 5 Wend. 55.

To render the witness in the present case incompetent, it must be shown, not only that the duties required of the corporation to protect its members from personal liability have been neglected, but to obviate the uncertain and contingent character of the liability, it should be shown that the means of the corporation were insufficient for the payment of their debts; that a legal demand had been made of the corporation, and the debt had not been paid, or property exposed to attachment, and, perhaps, that sixty days have since expired.

II.　In the case of *Carter* v. *Burley*, 9 N. H. Rep. 538, it was decided that the holder of a note or bill may, if he pleases, forward notice on the day of the dishonor, and any prior party receiving notice may transmit a notice on the day he receives it; and this decision was affirmed, as to the first point, in *Smith* v. *Little*, 10 N. H. Rep. 526; and in the former case it was held, that upon the dishonor of a bill or note, when the parties to it reside in different places, it is sufficient, if the holder puts a notice into the post office, in season to be transmitted by the mail of the next day, and each indorser may in like manner transmit a notice by the mail of the day succeeding that on which he receives notice. But if the party receiving notice cannot by the exercise of reasonable diligence forward notice to a prior party by the mail of the day following, it will be sufficient if sent by the next mail.　These principles, we think, are fully supported by the authorities cited by the court.　They are plain and

clear rules, easily followed in most cases, are in accordance with the usages of mercantile parties, and have long been regarded as the settled law of the State. The notices in this case were sent in due season, agreeably to these decisions.

III.   The notice dated September 26, 1851, informed the indorser that D. B. Kimball's acceptance for $682, indorsed by him and due that day, had been  presented and payment was refused, and that he was held answerable.  A case might be supposed where a notice in this form might be insufficient, because it failed to identify a particular note, but that could not be assumed to be the case here.   If there was any uncertainty, the facts, out of which that uncertainty arises, should be  shown.   For all common cases, the name of the acceptor, the amount, and  day of payment, and the fact of the indorsement, are all that can be necessary to identify the note or acceptance.   The case comes clearly within the decision in *Smith* v. *Little*, before cited.   Story on Prom. Notes, §§ 348, 352.   See *Clark* v. *Eldridge*, 13 Met. 96 ; *Wheaton* v. *Wilmarth*, 13 Met. 422 ; *Bank* v. *Warden*, 1 Comst. 413 ; *Remer* v. *Downer*, 23 Wend. 620.

IV.   The defendant, the indorser, resided at Deerfield. There are two post offices in that town, designated as Deerfield and South Deerfield, about  six miles apart.   The defendant resided near the latter.   The notice was directed to the  defendant at Deerfield.   Such cases are  very frequent, and the rule is important.   The  ordinary rule requires the notice to be addressed to the defendant at his place  of residence.   It was so done.   There is no locality or district legally known as South Deerfield.   It is a name of a post office merely.

There are  cases where it is held  that if a party reside in a county, and not in a town, it will be sufficient to send notice to him, directed to him at the court house, or seat of justice of the county, although  in point of fact there is a post office nearer to his residence, where he usually receives

his letters. Story on Bills 297; *Weakly* v. *Bell*, 9 Watts 213; *Bank* v. *Carneal*, 2 Pet. 545. And in *Downer* v. *Remer*, 21 Wend. 10; 23 Wend. 620, it was held that notice of protest, sent by mail, directed to the town where the party resides, is sufficient, although there be several post offices in the town, unless it appear that the holder knew that it should be directed in a different manner.

It is not necessary to anticipate how the question might be varied, if it appeared affirmatively that the cashier had been notified that the defendant's post office address was South Deerfield. See *Carmen* v. *Bank*, 1 Lane's An. R. 369; *Ireland* v. *Kip*, 11 Johns. 231; *Brent* v. *Bank*, 1 Pet. S. C. 89; *Downer* v. *Remer*, before cited.

Nothing appears to show that the fact of the defendant's residence near the South Deerfield post office was known to any of the other parties.

The rulings of the court being sustained, there must be,

*Judgment on the verdict.*