By the Chancellor.
The questions presented for the consideration of the court in the present case, are, whether the notice of protest of the note upon which Remer was’an endorser, was directed to the right place; and if so, whether the notice itself was sufficient- to charge him as an endorser ?
It is the settled law in this state, that if the drawer of a hill of exchange, or the endorser of a bill or note, does not reside in the town or place where such bill or note is payable, the notice of dishonor may be sent by mail, directed to him, at the place of his residence, or if he is in the habit of receiving his letters and papers through the post office in an adjoining town, the notice may be directed to him at either place. Reed v. Payne, 16 Johns. R. 218. Bank of Geneva v. Howlet, 4 Wendell, 328. It is insisted, however, on behalf of the plaintiff in error in the present case, that if there are-several post offices at the place where the party entitled to notice resides, the party giving the notice must ascertain which office is nearest to such residence, and direct the notice to that office; and such appears to have been the decision of the supreme court in the case of Cuyler v. Nellis, 4 Wendell, 398. The defendant in that case, as in this, resided in the town to which the notice was directed; and about the same distance from the place where it was mailed. The notice went to the post office bearing the name of the town, but which was more than six miles from the residence of the endorser; although there was another post office in that town^called Canajohaire Centre, within three fourths of a mile of him. I am not able to distinguish that case from the present; and if that decision ' was right, a contrary decision of the supreme court upon the [ *623 ] same point in the present case, cannot be sustained. It ‘therefore remains for this court of dernier resort to settle the question between these conflicting judgments of the court below.
The true question, in all these cases, is, whether the holder of the note or bill has made use of due and reasonable diligence to bring home notice of its dishonor to the party whose contingent liability depends upon his having such notice. It has been deemed important by the courts in these commercial cases, to establish, as far as is practicable, fixed and certain rules as to what shall be considered due diligence, so that the holders of negotiable paper, and those who are contingently liable for its payment, upon the_ default of the parties who are primarily liable, may know and understand their rights and duties in each particular case that may arise. It is, therefore, the settled rule in this state, that where there is no dispute about the facts, the court is bound to determine the question of reasonable diligence; and should not submit that question to the jury to be decided as a matter *623 of fact. The Mohawk Bank v. Broderick, 10 Wendell, 304. 13 id. 133. Where the facts are disputed, it becomes a mixed question of law and of fact. In such a case it is the duty of the court to state the legal principles which are applicable thereto to the jury ; and then to leave the question to be determined by them, according to those principles, as they shall ascertain the facts to be in favor of the one party or the other.
In the ease under consideration there was no dispute as to facts. It was proved that there were three post offices in the town where the endorser resided, and that he was not in the habit of receiving his letters and papers through either of those offices, but at the post office in the adjoining village of Penn Yan ; that the letter was addressed to him at the town of Benton, generally, without designating the particular office in that town to which it was to be sent; that the postmaster at Elmira mailed it to the office corresponding with the name of the town, which office happened to be the one that was farthest from the residence of the endorser ; and that the letter was not in fact received by the endorser for more than seven weeks after it arrived at *that office. It was not pretended that [ *624 ] the notary of the bank knew where the endorser received his letters and papers by mail, or which office in Benton was nearest to his residence, and designedly directed the letter to the office which was further off. Nor was there any evidence from which it could be inferred that the notary made any inquiries for the purpose of ascertaining in what particular part of the town of Benton Remer resided, or at what post office he was in the habit of receiving his letters and papers. The judge, therefore, should have decided the question himself whether the notice had been properly directed, so as to charge the endorser; but if the notice was sufficient in this respect, the plaintiff in error cannot complain that the question was left to the jury to be passed upon by them as a matter of fact, instead of being decided against him by the court as a legal question.
Upon^full consideration of the subject, I have arrived at the conclusion that the decision of the supreme court in the case of Cuyler v. Nellis ought not to be sustained; and that it was properly disregarded by the same court in the present case, as a precedent which had not been followed, The act of April, 1835, statutes of that year, p. 152, does not apply to this note, which was made and endorsed several days before the passage of that act; it can only be referred to therefore as showing the legislative sense of what ought to be deemed due diligence in relation to future contracts; leaving the question in previous cases to be settled by the courts. I think, however, that act was in exact conformity with what was the previous common sense commercial rule on the subject; except in those cases where the person entitled to notice lived in an incorporated village, having a distinct post office from the office bearing the general name of the town in which such village was situated. Where a town constitutes the smallest political as well *624 as geographical district of territory, in making enquiry for the residence of a person for the purpose of writing to him by mail, the usual custom of the country is to inquire in what town he resides; and having asder- [ *625 ] tained that fact, to direct the letter to him at that town, ‘without inquiring the name of the post office at which he receives his letters, or the exact distance of his residence from any particular office, if there are more than one in the town. Post offices, as such, have no particular district of country attached to them; but the names, in this state particularly, usually correspond with the smallest political division of territory which the location of the office is intended to accommodate. Where there are different offices in the same town, it is usual fcr business men residing there to inform their correspondents to which office they wish thfir letters, &e. to be directed, if they do not wish the trouble of sending periodically to all the offices ; or they make an arrangement with the post masters at the other offices to forward letters from those offices, when sent there, to that which is nearest or most convenient to their residences. In analogy to this known practice, therefore, if the endorser of negotiable paper wishes the notice of protest to be directed to him at any particular place other than the post office bearing the name of the town or incorporated village in which he resides, he should add a direction to that effect to his endorsement. Indeed a rule which would compel the endorsee of a note in all cases to inquire and ascertain where an individual living forty or fifty miles off was in the habit of receiving his letters, or to ascertain the precise distance of his house from the different post offices in the town where he resides, would be found to be productive of innumerable mistakes, without any corresponding benefit; for it frequently happens that the post office which is nearest to the endorser’s residence, is not that which is most convenient to him. Upon this point, therefore, I see no good reason for disturbing the judgment of the court below.
I think the circuit judge was also wrong in submitting it to the jury to decide, whether the written notice which was sent in this case, was upon its face a sufficient notice to apprise Remer of the dishonor of the note which he had endorsed; and whether it was calculated to mislead him. Here again there was no matter of fact to be ascertained by the jury, and it is the peculiar province of the court, in such cases, to give a con- [ *626 ] struction to a written notice. In *the case of Solarte v. Palmer, which went through all the courts in England, and was finally decided by the house of lords, on a writ of error to the exchequer chamber, in relation to the sufficiency of a written notice of the dishonor of a bill of exchange, the question was discussed and decided as one which the court was bound to determine; and not as one which was to be submitted to a jury for decision. 1 Cromp. & Jervis R. 417. 2 Clarke & Finn. P. 93. 1 Bing. New Cas. 194. The construction of the written notice was also *626 settled by the court as a legal question in the cases of Hartley v. Case, 4 Barn. & Cress. 339 ; Boulton v. Welsh, 3 Hodges' R. 77; Strange v. Price, 2 Perry & Dav. R. 278; Gurgeon v. Smith, 1 Willm. Woll. & Dav. R. 516; and Hedger v. Smith, 1 Murph. & Hurl. R. 178. The note in this case was drawn by Young, for $560, payable to Whitaker or order, at the Chemung Canal Bank, in 18 months, endorsed by Whitaker, and subsequently by Eemer, and the notice which was sent was directed, on the face of it, to N. T. Williams, Cash’r ; informing him that Young’s note for $999,52, endorsed by him, was protested for non-payment, and that the holders looked to him. This notice was not directed to Remer, and did not describe any note that he had endorsed for Young, either as to date, amount, or time of payment. Nor did it contain any intimation that it was the note which he had negotiated eighteen months before. It is perfectly clear, therefore, that this notice must be held to be insufficient, unless the direction to Remer, on the outside of the letter, was enough to apprize him that it was Young’s note of $560, payable to Whitaker, and endorsed by Remer, which had been thus dishonored. Had the note itself been correctly described, I should be inclined to the opinion that the misdirection of the notice on its face would have been cured by the correct direction on the outside of the letter. But a notice, in cases of this kind, which is barely enough to put the endorser upon inquiry, is not sufficient. It should be such a notice as to convey a distinct impression that the note endorsed by him has been duly presented to the maker for payment, and has been dishonored. Beauchamp v. Cash, Dow. & Ry. N. P. R. 3. Messenger v. * Southey, 1 Scott's R. New Ser. 180. No precise [ *627 ] form of words is necessary for that purpose ; but the note should be sufficiently described to enable the party to see that it is the one endorsed by him. Here Eemer was an endorser upon a note of $560 ; and he could not have supposed that “James Young’s note for nine hundred and ninety-nine dollars and fifty-two cents,” and endorsed by Williams, to whom the notice purported to be given, was the one intended ; although he might have suspected that there had been some mistake, in sending him the wrong letter. But certainly this notice was not sufficient to enable him to act upon it, by giving notice of the dishonor of the $560 note to Whitaker, who endorsed it to him. The legitimate conclusion which he would have drawn from the whole ease, if he had received the letter in time, probably would have been that N. T. Williams had endorsed a note of Young for this larger amount, and that - the letter had been wrongly directed on the back, by mistake. The question whether Eemer was actually misled by the notice, could not possibly arise in this case, as he did not receive it for more than a month after this suit was commenced ; and when of course he must have ascertained that the note which he endorsed had been dishonored.
*627 On this ground, therefore, I think the judgment of the court below was erroneous and should he reversed.
Whereupon the judgment of the supreme court was reversed ; 17 members voting for a reversal.