## The Seneca County Bank *vs.* Neass.

A notarial certificate given in evidence, to charge an indorser, stated that on the proper day the notary had presented the note and that payment was refused, and then after the usual words of protest, added " on the same day and year above written *due notice of the foregoing protest* was put into the post office " &c.; *held* that the contents of the notice were sufficiently stated.

In the statement of the *presentment* in such a certificate, of a note payable at a bank, it is not sufficient to say that the note was presented *to the cashier* of the bank. It must appear that it was done *at the bank*.

Where the indorser of a note resides in a different town from that at which it is payable, notice of dishonor may be sent by mail directed to the town of his residence, though he receives his letters at the post office in the town where the note is payable, and that office is nearer to him than the one in his own town.

Where an indorser receives his letters at a post office in an adjoining town, which is also nearer to him than the post office in his own town, notices of dishonor from a town remote from both, may be sent either to his own town, or to the office where he receives his letters. *Per* WHITTLESEY, J.

Where a bank had allowed the liabilities of its directors to amount to a sum beyond that allowed by law, and the cashier of the bank, in anticipation of a legal examination of its affairs, and to reduce the directors' liabilities, procured notes to be made and endorsed for his accommodation, and with them took up other notes of his held by the bank on which a director was his indorser; *held* that the transaction was not illegal, and that the parties to the substituted paper were liable thereon.

Where the maker of a note had procured another to indorse it for his accommodation, with a view to use it in his business, and he afterwards lent the note to another who negotiated it to a *bona fide* holder; *held* that the circumstances did not furnish a defence to the indorser.

So *held* where the party to whom the note was lent was the cashier of a bank, and he negotiated it, by procuring it to be discounted at the bank of which he was cashier.

ASSUMPSIT on a promissory note, against the second indorser, .ried at the Seneca circuit, in November, 1844, before WHITING, Cir. J.

The plaintiffs proved the defendant's indorsement to a note dated July 9, 1842, made by N. P. Lee, to the order of A. Reading, for the payment of two thousand dollars at the Seneca County Bank, [at Waterloo,] nine months from date, indorsed by the payee and by the defendant.

To show that the defendant had been charged as indorser, the plaintiffs gave in evidence a certificate, or protest, under the hand and official seal of P. T. Mumford, a notary public. This paper stated that on the 12th day of April, 1843, the day on which it fell due, the notary presented the note, which was attached to the certificate, " to the cashier of the Seneca County Bank and demanded payment, which was refused." The paper proceeded to make a protest against all the parties, in the usual form, and then stated as follows: " And I the said notary do hereby certify that on the same day and year above written, *due notices of the foregoing protest* was put into the

post office at Waterloo, or served as follows." "Notice for George Neass, [the defendant,] directed, Fayette, N. Y. Notice for the same, directed West Fayette, N. Y., (notices were also mentioned as sent to the other indorser,) each of the above named places being the reputed place of residence of the person to whom the notice was directed, and the post office nearest thereto in said town. In testimony whereof," &c.

The defendant's counsel objected to the sufficiency of the proof of demand and notice. 1. Because the certificate did not state that the demand was made at the bank, but only of the cashier. It was shown in the course of the trial by the evidence of the notary that the demand *was* made at the bank. 2. That the *contents* of the notice are not stated. 3. That it does not appear that the notary deposited the notices in the post office himself, or saw them deposited. The judge held the evidence sufficient to charge the defendant as indorser, and the defendant's counsel excepted.

It was proved, on the part of the defendant, that he resided in the adjoining town of Fayette, and about three and one half miles from Waterloo, and that he received all his letters and papers at the post office in Waterloo, and deposited there such as he had to send by mail, and that he had considerable correspondence, and also that he transacted his milling and trading business at Waterloo; that there were two post offices in Fayette, one called West Fayette, about four miles from the defendant's residence and still more remote from Waterloo, and the other Fayette, which was about four miles from his residence, both being in inconsiderable places, to which the mail came from Waterloo but twice or thrice a week, by a circuitous route, and that the defendant never received letters or papers at either of those offices.

The defendant then gave evidence with a design to show that his indorsement was without consideration, and that the plaintiff's were not *bona fide* holders. For this purpose he proved by Lee, the maker, that the signatures of the indorsers were obtained for his accommodation, and that the plaintiffs became the holders under the following circumstances: that

some time before the making of this note, Mr. Mercer, the cashier and financial officer of the bank, applied to the witness for the loan of his, the witness', notes to the amount of $5000, in order to substitute them for the paper of Mercer, held by the bank, which was indorsed by a director; and said to him that the directors' liabilities were beyond the amount allowed by law, and that he wished to reduce them on account of an expected visit from the bank commissioners. The witness accordingly made his two notes for $2500 each, and procured them to be indorsed by his friends and gave them to Mercer, he agreeing to provide for them; that these notes were several times renewed, until the date of the note in suit; that this note was made and indorsed by the payee and the defendant in order to aid the witness in his general business, and that before he had negotiated it, one of the notes which he had made for Mercer's benefit became mature, and Mercer having applied to him to continue the accommodation, he let him have the note in suit, to take up the note which had become payable, Mercer undertaking to pay it at maturity.

The plaintiffs proved that the parties to the notes originally held by the bank, were responsible men, and that these notes were taken up by the first notes of N. P. Lee loaned to Mercer, and that the note in question was discounted, and the avails applied to take up what remained due on one of the notes given in renewal of the first notes of Lee so loaned to Mercer.

The defendant's counsel, besides the points before mentioned, contended that notice of non-payment should have been served upon him, personally, or left at his place of business; and also that there had been a diversion of the note from the object for which it was made and indorsed, with the plaintiffs' knowledge, which rendered the indorsement of the defendant void in their hands. He also insisted that the purpose for which the first notes were received was a fraud upon the statute, and rendered the transaction illegal, and that the note in question having been given to renew and continue the indebtedness thereby created, was likewise illegal and void, and he asked that the

jury might be instructed in accordance with these propositions, The judge refused to charge as requested, but on the contrary advised the jury that the plaintiffs were entitled to recover. The defendant excepted, and the jury found a verdict for the plaintiffs.

*J. K. Richardson*, for the defendant, moved for a new trial on a bill of exceptions.

*S. Birdsall*, for the plaintiffs.

McKISSOCK, J. The counsel for the defendant objects to the sufficiency of the certificate of the notary, that it does not disclose the contents of the notice; and it is said that inasmuch as a protest is not applicable to a promissory note, the certificate of a *protest* has no legal signification, and that the statement in the foot of the paper that on the day of the date of the protest notices of it were deposited in the post office amounts to nothing more than evidence of notice of the performance of an act having no legal meaning. But it will be remembered that the certificate of protest states the facts which are the basis of the right to hold the indorser, to wit, the demand and non-payment, and this is followed by the formal protest. Whatever may be the legal effect of such an act in the case of a promissory note, the notice of the protest then necessarily implies notice of the demand and refusal to pay, as there can be no such thing in form or substance as a protest, without setting forth those facts. The contents of the notice were thus abundantly manifest in the present case. The certificate stated that the notices of protest had been sent; and the protest itself showed that a presentment had been made and that the note was not paid. These facts were part of the protest; they were stated in the same paper and it was of these facts that we must intend the notice was given. Besides, this certificate of the notary seems to be in conformity with the language of the statute under which it was offered. (*Stat.* 1833, *p.* 395, § 8.) The provision is as follows : "In all actions

at law the certificate of a notary under his hand and seal of office, of the presentment by him of any promissory note or bill of exchange for acceptance or payment, and of any *protest* of such bill or note for non-acceptance or non-payment, and of the service of notice *thereof*, on any or all the parties to such bill of exchange or promissory note, and specifying the mode of giving such notice, and the reputed place of residence of the party to whom the same was given, and the post office nearest thereto, shall be presumptive evidence of the facts contained in such certificate." Here the word protest is used in its ordinary sense, and it is applied as well to a promissory note as to a bill of exchange. This, though not legally correct, is sufficient for practical purposes, inasmuch as a protest in form can as well be made of a note as of a bill of exchange. And as it must always, as above remarked, contain the statement of demand and non-payment, the indorser will be thereby apprized of the dishonor of the note to which it relates. Moreover, the practice of protesting promissory notes was very general in this state at the passage of the law, and answered a valuable purpose, in case of the death of the notary, as his certificate might then be used as evidence.

An objection is also made that the certificate did not show that the notary deposited the notices in the office. That is implied from the terms of the certificate, as it states positively it was done. (*Ketchum* v. *Barber*, 4 *Hill*, 236.) There was, it is true, a defect in the certificate, as it did not state where the demand of the note was made, but this difficulty was obviated by the oral testimony of the notary, which showed that it was at the banking house of the plaintiffs—the place of payment.

Having seen that the notice was sufficient in substance, we are next to inquire whether it was properly directed. The note being payable in the town and village of Waterloo, and the defendant residing in the town of Fayette, the notices were put into the post office at Waterloo, addressed to the defendant, one directed to West Fayette and one to Fayette, both offices being in his own town. This would appear to be all that was

required. But it is argued that as he did all his post office busi-ness at Waterloo, which, it is said, must have been known to the plaintiffs, they should have served him with notice person-ally or by leaving it at his residence. To maintain that proposi-tion *Ireland* v. *Kipp*, (11 *John. Rep.* 231;) *Louisiana State Bank* v. *Rowel*, (18 *Martin's Rep.* 506;) and *Leporte* v. *San-dey*, (17 *id.* 359,) are cited. These cases by no means support the position contended for. They simply determine, that when the indorser resides in the same place, parish or town where the note is demandable, the post office there is not a legal place of depositing a notice, even though he gets his letters there, but that in such case the notice should be personal, or at the indor-ser's residence, unless there is another office in the same town or parish more convenient to him, to which it is directed. Where on the contrary the holder and the indorser reside in different towns, the rule is, that the notice may be sent by mail directed to a post office in the town in which the indorser lives. (*Story on Promissory Notes,* 324; *Kent's Com.* 107, 3d ed.) Where there are several post offices in the town in which the indorser lives, there appears to have been some uncertainty whether the common law requires the notice to be forwarded to the office which is nearest his residence; and the general opinion appeared to be that it was necessary to direct to the nearest office, though in *Remer* v. *Downer*, (23 *Wend.* 620,) Chancellor Walworth clearly shows that even before the act of 1835, it was not so. That question, however, is not materi-al in the present case. There is no designation on this note of the office to which the indorser desired notice to be sent. The act referred to therefore applies. It declares that where no place is designated, the notice may be sent directly to the city, or town, where the party to be charged resided when the note or bill was made or indorsed. (*Stat.* 1835, *p.* 152.)

There is nothing in the defence that the original agreement by which Mercer procured the notes of Lee, was made in fraud of the act regulating moneyed corporations, or to deceive the bank commissioners. The bank had made discounts to direc-tors, or on paper on which they were responsible, beyond what

was lawful. On a part of that paper one of the directors was indorser for Mercer, the cashier. Of this he informed Lee, wno appeared to be his friend, and stated his desire that such liabilities should be reduced before the next call of the commissioners. At the same time he requested Lee to let him have his notes with which he could effect his purpose. Accordingly he obtained from Lee his notes indorsed by others, with which he paid and took up the illegitimate paper on which the bank director was his indorser. This appears to have been done in good faith and not as a shift to present a temporary appearance of soundness in the officers of the bank. The substituted notes appear to have remained permanently the property of the bank. It was not a contrivance to withdraw them till after the expected examination and then to restore them, but a mode of undoing the wrong which had been committed by substituting unobjectionable paper for that which ought not to have been received.

I see nothing wrong in all this. It was desirable that the objectionable paper spoken of, should be paid or taken up by other paper that was not so. And it was not the less lawful or proper that this should be done, because the bank commissioners were about to make a visit of inspection. Though if it had been the result of a sense of duty, the act would have been more graceful.

Again, it is no bar to the plaintiffs' action, that the defendant was an accommodation indorser, if they took the note *bona fide* for a valuable consideration before due. This they did by advancing the cash for it, to Mercer, with which and with money of his own, he paid one of the notes of Lee, which the plaintiffs then held. Every person who becomes a party to an accommodation note or bill, does so for the purpose of giving it credit and value, and he will not be permitted to deny, against a *bona fide* holder for valuable consideration, that he put his name on the paper for value actually received. (*Story on Promissory Notes*, 194; *Chit. on Bills*, 91, 333, 334, 8th ed.) And this valuable consideration for which the holder has taken it may be, as well the satisfaction of a precedent debt as

an advance of the consideration at the time. (*Story on Promissory Notes,* 195; *Bank of Salina* v. *Babcock,* 21 *Wend.* 499; *Bank of Sandusky* v. *Scoville,* 24 *Wend.* 115; *Swift* v. *Tyson,* 16 *Peters,* 22.)

But it is said the note was indorsed for a particular purpose, and that it was fraudulently misapplied by the drawer, with the knowledge of the plaintiffs. But there is no proof in the case that it was indorsed for any particular object, beyond the general accommodation of Lee. All that is said by any witness in relation to the object of the note, is in his testimony, in which he swore that when he gave Mercer the note, he said there is a note made for another purpose, but he did not swear that it was in fact given for another purpose. Still suppose he had so testified, that would have been altogether too indefinite. It might mean only that it was indorsed for his accommodation generally, so far as the indorser's motives were concerned, but that he had intended to apply it in a different way. If this were so, the application of it, which was actually made, would have been no perversion of the note. And it is plain that he meant nothing more than what is above suggested, as he had already testified, that he did not remember that any particular purpose was spoken of when he procured the indorsement of the note. Besides, if there were a misapplication of the note, it must, to make it a defence, have been taken by the plaintiffs with knowledge of the fact. Of such knowledge there was not the least direct evidence, and it is not true as a legal proposition, that because Mercer, the cashier, was at the time the financial agent of the plaintiffs, that therefore they were chargeable with the knowledge he may have had on the subject. He was not acting as cashier in the procurement of the note. It was his own individual business, and he was engaged like any other dealer with the plaintiffs, to procure the means of paying his debt and sustaining his credit. He can in no sense be considered the agent of the plaintiffs in the transaction, and they were not in legal identity with him, either as to his acts or his information in respect to it.

Upon the whole the plaintiffs made out their case fully, and

as there were no disputed questions of fact, the judge was cor‧ rect in directing the jury to find a verdict for the plaintiffs.

WHITTLESEY, J. The defendant is sued as indorser of a promissory note. One question is whether the notice of demand and of non-payment was served in the right manner. When the indorser resides in the same place where the demand is to be made, the notice must be personally served, or left at the indorser's dwelling house or place of business. Placing it in the post office directed to such indorser is not sufficient. (*Ireland* v. *Kip*, 10 *John.* 490.) This is not such a case, as the indorser resides in a different place from the place of demand, though he obtains his letters at the post office of the town and village in which the demand was made. When the indorser resides in a place different from that of the demand, notice of dishonor may be sent to him by mail; and where there are several post offices in the town in which the indorser resides, it is not indispensable that it should be directed to the post office nearest to him, but it is sufficient if it is directed to the post office where he usually gets his letters, even though it is not in the same town where he resides. (*Reid* v. *Payne*, 16 *John.* 218; *Bank of Geneva* v. *Howlett*, 4 *Wend.* 328; *Remer* v. *Downer*, 23 *id.* 620.) And when the indorser resided in the same town, though at seven or eight miles distance, and generally received his letters at a post office in another town, a notice directed to such post office in such other town was held to be good. (*Ransom* v. *Mack*, 2 *Hill*, 587.) The case of *Cuyler* v. *Nellis*, (4 *Wend.* 398,) requires that notice, if sent by mail, should be sent to the post office *nearest* to the defendant, if there be more than one post office in the town in which he resides, or to the post office where he resorts for his letters. This would require the holder at his peril to ascertain what post office was nearest to the defendant, or at what post office he receives his letters. The doctrine of this case was however overruled by a subsequent one in the court for the correction of errors. (*Reymer* v. *Downer*, *supra*.) It is probable that the case of *Cuyler* v. *Nellis* caused the passage of the act of April 23, 1835,

which provides that when notice of non-payment may be given by sending it by mail, it shall be sufficient to direct it to the city or town where the person sought to be charged resided at the time of indorsing the paper, unless such person shall specify some other post office to which he may require the notice to be addressed. (*Stat.* 1835, *p.* 152.)

If the place of payment had been other than Waterloo, (Geneva for instance,) it is quite clear that under the decisions and the facts of this case a notice sent by mail to the defendant at Waterloo would have been sufficient; and I am induced to think that a notice addressed to the defendant at Fayette would also have been regular. In such case, the place of payment being at Geneva, as notice might be given by being sent by mail, the act of April, 1835, would apply, and make a notice to Fayette good. But if the place of payment being elsewhere than Waterloo, and the proper place for directing the notice being Waterloo, does it or does it not follow that the place of payment being Waterloo, a notice cannot be sent by mail, but must be served personally? This question is not answered by any case in our own courts. Notices cannot be sent by mail where the parties reside in the same city or town, unless the party to be charged usually receives his letters in another town. But here the parties do not reside in the same town, though the defendant, residing in a different town, receives his letters at the post office of the place of payment. If on account of this fact a personal notice only is available, the act of April, 1835, will not aid the plaintiff, as that act is only applicable to cases where notices may be properly given by sending by mail. According to the case of *The Bank of Columbia* v. *Lawrence*, (1 *Peters' Rep.* 578,) a notice deposited in the post office at Waterloo and directed to the defendant at Waterloo, would be good; and if such doctrine was recognized here the act of April, 1835, might aid the plaintiff. But it seems to be considered in this state that the post office is not the proper place of deposit of such notices, unless it is afterwards to be transported by mail to some other place. (*Ransom* v. *Mack, supra.*) The precise case presented does not appear to have been decided ·

and it seems to me to be a nice one on this point, upon the principles to be extracted from the decided cases. I am however ind1ced to think, from the reasoning of the chancellor in the case of *Remer* v: *Downer*, above cited, that under the facts of this case a notice directed to the defendant in the town where he resided would be good. That was his known place of residence. Notices were sent to him at that town, because it was his known place of residence; and the knowledge of the fact that he usually obtained his letters at the Waterloo post office is not brought home by the proofs to the plaintiffs or their agent. Under such circumstances, if the defendant wished his letters or notices to be directed to any other place than the town in which he lived, he should have added directions to that effect. If a notice to him in Fayette, as being the place of his residence, was proper, there can be no question about the nearest post office in that town. The act of 1835 in such case helps the plaintiffs, and on the whole I think the notice was served in the right manner.

Another question is presented, whether there is proper proof of the service of notice of demand and non-payment. The proof is attempted to be made out by the certificate and testimony of the notary. The certificate is certainly not of itself sufficient. The note was payable at the bank. The certificate states that payment was demanded of the cashier without stating that such demand was made at the bank. This is helped, however, by the subsequent oral proof of the notary, that the demand was made at the bank. As to the notice, the certificate states positively that the notice was deposited in the post office at Waterloo. This notarial certificate is made evidence by statute. (2 *R. S.* 212, § 46, *2d ed.*) I think it shows sufficiently every thing requisite, unless it may be the form and substance of the notice sent to the defendant. The certificate speaks of *due notice of protest*, without describing what such notice was. The certificate had before described the note, stated the demand of payment and refusal to pay, and then made a solemn protest against all parties for damages, interest, &c. It then states that due notices of *such protest* were sent, &c. In

Seneca County Bank *v.* Neass.

the language of mercantile law there is no such thing known as a protest of inland bills of exchange or promissory notes ; yet the practice of making a protest or solemn declaration of the default of payment and claim for damages, as in case of foreign bills, has grown up in relation to inland bills of exchange and promissory notes.   In the case of a promissory note, a notice of demand and non-payment is the material thing, and it is about nonsense to speak of notice of protest ; yet the act authorizing these notarial certificates employs that language.   No particular form of words is necessary in giving notice to an indorser. It is sufficient that he be informed in substance that the note is dishonored.   (*Ransom* v. *Mack, supra.*)   I think we may fairly infer from this certificate, where it speaks of *due notice of protest,* that it means a notice describing the acts against which the notary protested, which would be clearly sufficient notice of the dishonor of the note.   I think we may properly infer this when the other party neither makes affidavit that he has received no notice, nor produces the notice which he has received, that the court may see whether it is sufficient or not.   Hence I think the service of a proper notice is sufficiently proved.   (*See also Ketchum* v. *Barber,* 4 *Hill,* 224.)

The other points made in the case I think are all with the plaintiffs.   (*Bank of Sandusky* v. *Scoville,* 24 *Wend.* 115 ; *Bank of Salina* v. *Babcock,* 21 *id.* 499 ; *Bank of Rutland* v. *Buck,* 5 *id.* 66.)   I think a new trial should be denied.

BEARDSLEY, Ch. J. was of opinion that none of the objections taken to the verdict could be sustained.

New trial denied.