Montgomery County Bank *v.* Marsh.

———•—•———

## THE MONTGOMERY COUNTY BANK *vs.* MARSH.

Where an indorser resided in the town of Palatine, in which town there was a post office, at Palatine Bridge, but had a box for receiving letters at Canajoharie, where his principal place of business was, and where he received most of his letters, *it was held*, that a notice of protest addressed to him at Canajoharie, was good service, although his residence was nearer to the post office in Palatine Bridge, than to that in Canajoharie. HAND, J. dissented.

It does not vary the case that the plaintiffs' cashier *knew* that the defendant resided in Palatine Bridge, since he also knew that the defendant's place of business was in Canajoharie; and that the note was dated at the latter place, as were his letters to the plaintiff concerning the note.

A stockholder of a bank is a competent witness for the bank, under the code, § 398.

A corporator is not a party for whose immediate benefit the suit is brought, under § 396 of the code.

THIS action was brought upon two promissory notes, made by Loucks & Gray, payable three months after date, to the order of Peter G. Loucks, and indorsed by him and the defendant, Seymour N. Marsh; the one note payable at the Bank of the State of New-York, in the city of New-York, for $1000; the other payable at the Montgomery County Bank for $800. The notes were dated May 2, 1848. The defendant denied the receipt of notice of protest as to both notes, and one question was as to the sufficiency of the service of notice. The facts are sufficiently stated in the opinion. With respect to the $800 note, another question was made, whether the notary who protested it was a competent witness for the plaintiffs, he being a stockholder of the bank. The cause was tried before Mr. Justice Paige at the Fulton circuit, in December, 1849, without a jury. The learned judge held that the notes were properly protested, and that the notary, who was a stockholder, was a competent witness for the plaintiffs, and gave judgment for the amount of the notes.

The defendant appealed to this court.

*T. B. Mitchell*, for the appellant.

*John Wells*, for the respondent.

WILLARD, P. J. The plaintiffs sued as holders of a promissory note, dated at Canajoharie, May 2, 1848, and made by Loucks & Gray, payable three months after date to the order of Peter G. Loucks, for $1000, at the Bank of the State of New-York, in New-York city. It was indorsed by Peter G. Loucks, the payee, and by the defendant, Seymour N. Marsh. The present question arises between the plaintiffs and Seymour N. Marsh, who was the second indorser. The question as to the above note is, whether a notice of protest, addressed to him at Canajoharie, was a good service, his residence being at the time in Palatine, and the post office at Palatine bridge being in the town where he resided, and nearer by about half a mile to his place of residence than the Canajoharie post office.

The act of April, 1833, (*Laws of* 1833, *p.* 394, § 8,) and the law of 1835, (*Laws of* 1835, *p.* 554,) have nothing to do with this question, as the proof of sending the notice is admitted, and does not rest upon the certificate of the notary.

The evidence is that Marsh had a box for receiving letters at the Canajoharie post office, where he received more letters than at Palatine Bridge, if we may judge from his postage account, in the proportion of sixteen to one. His place of business was at Canajoharie. He was engaged in the making and selling of trusses. They were manufactured at Cherry Valley, where he had an office. He had an office also in New-York city. "The head-quarters," as the witness describes it, " for his truss business was at Canajoharie." It was shown, that when at home, he was in Canajoharie nearly every day. It was proved by the postmaster of Canajoharie, that the defendant invariably refused to take notices of protest addressed to him at Canajoharie, after he moved to Palatine. Three letters were given in evidence by the plaintiffs, from the defendant to them, in relation to a note they held against him, which were dated at Canajoharie in the months of May and July, 1848, while the note in question was running to maturity. The defendant did not add to his name, as indorser, his place of residence.

The notice was properly addressed to the defendant at Canajoharie. That was the principal place of business of the defendant, and where he received the most of his letters. His refusal to take out protests was not known to the plaintiffs, and affords no evidence that the notices addressed to him there were misdirected. The true question in all these cases is, whether the holder of the note or bill has made use of due and reasonable diligence to bring home notice of its dishonor to the party whose contingent liability depends upon his having notice. (*Per Walworth, Ch.* in *Remer* v. *Downer,* (23 *Wend.* 623.) In *Reed* v. *Payne,* (16 *John.* 218,) Ch. Justice Spencer, in delivering the opinion of the court, says, if the notice be sent to the post office to which the party usually resorts for his letters, it would admit of no doubt that such notice would be good, although it was in a different town from that in which he resided. This

doctrine was again asserted in *Bank of Geneva* v. *Howlett*, (4 *Wend.* 328, 331.) It is not, say the court, indispensable that the notice should be sent to the office nearest to the residence of the party, nor even to the town in which he resides. It is sufficient if it be sent to the office to which he usually resorts for his letters, and where he would probably receive it as soon as at the office nearer to him. The same principles have been declared by the supreme court of the United States in *The Bank of Columbia* v. *Lawrence*, (1 *Peters*, 578. 3 *Kent's Com.* 107.) The case of *Cuyler* v. *Nellis*, (4 *Wend.* 398,) requiring notice to be sent to the post office *nearest* the defendant, is expressly overruled by the court of errors in *Remer* v. *Downer*, (23 *Wend.* 620.)

It is no objection to this service that the plaintiffs' cashier *knew* that the defendant resided in Palatine, and that he subjoined the name of Canajoharie to the defendant's indorsement on the note. He was probably led to do so from the fact that the note was dated at Canajoharie, and that the defendant's letters of business, received by him about the same time, were dated at the same place. The cases before cited show, that the notice to the defendant would have been well served had it been addressed to him at either post office.

With respect to the $800 note, another question arises, viz. Whether a stockholder of the plaintiff's bank was a competent witness for the plaintiff? The objection was, that he was incompetent on the ground of interest, and that the action was brought for his benefit.

The code takes a distinction between the examination of *parties*, to which ch. 6, of tit. 12 is devoted, (§§ 389 *to* 397,) and the examination of *witnesses*, which is regulated by the succeeding chapter. Wells, the witness who was objected to, was not a *party* to the action, and could not have been examined under chapter six, unless he could be treated by § 396, as the person for whose immediate benefit the action was brought. The corporator of a corporation, formed for municipal purposes, is a competent witness in behalf of his corporation in respect to corporate claims, or liabilities of all kinds, if he have no personal

Montgomery County Bank *v.* Marsh.

interest beyond that of a corporator. (*Cowen & Hill's Notes*, 1541.) But where the corporation is instituted for private emolument, such as banks, insurance companies, and the like, the interest of the corporators is direct, and they are incompetent to testify in support of their claim. (*Id.* 1543.) The objection in such cases is not the common law, technical one, of being a *party* to the record, but arises from *interest* alone.

The 398th section of the code, in the chapter on the examination of witnesses, enacts, that no person offered as a witness shall be excluded by reason of his *interest* in the event of the action. Hence, if Wells was incompetent merely on the score of interest, the code removed the objection. The 399th section provides that the preceding section shall not apply to a *party* to the action, nor to any person for whose immediate benefit it is prosecuted or defended, nor to any assignor of a thing in action, assigned for the purpose of making him a witness. It leaves those cases as they had already been provided for in the preceding chapter, or as they stood at common law.

The 6th chapter just cited is the substitute for the old bill of discovery. Such bill could never be sustained against the individual corporators. The corporation itself must be made a party. The confessions or declarations of a corporator would be inadmissible in a suit between the corporation and a stranger. (*Angel & Ames on Corp.* 204, § 4. 1 *Pick.* 302, 304.) A stockholder of a bank, in a suit brought by the bank, can not be treated as a *party* to the suit, nor as a person for whose immediate benefit the suit is brought, within the meaning of the code.

The principle involved in this case has been settled by the supreme court of the United States. Under the 11th amendment to the constitution of the United States, it is declared that the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States, by citizens of another state, or subjects of any foreign state. In the case of *The Bank of the United States* v. *The Planters' Bank of Georgia*, (9 *Wheat.* 904,) the state of Georgia, together with divers citizens, were the stockholders of the bank, and it was urged that this circum-

stance ousted the court of jurisdiction. But it was held otherwise by the court. As a member of a corporation, says Marshall, Ch. J. a government never exercises its sovereignty. It acts merely as a corporator, and exercises no other power in the management of the affairs of the corporation, than are expressly given by the incorporating act. The case of *The Louisville, Cincinnati and Charleston Railroad Co. plaintiffs in error,* v. *Letson, defendant in error,* (2 *How. Rep. S. C. U. S.* 497,) went a step further. In the latter case the jurisdiction of the court was denied, not only upon the ground that a state was one of the corporators, but also that two members of the corporation sued were citizens of North Carolina, and that two corporations in South Carolina were members, having in them members who were citizens of the same state with the defendant in error. It involved the question whether a corporation in a state could be sued in the circuit courts of the United States, by a citizen of another state, unless all the members of the corporation were citizens of the state in which the suit was brought. The court held that the suit could be sustained. They treated the corporation as a citizen of the state in which it was incorporated, and disregarded entirely the local residence of the corporators. The prior cases of *Curtis* v. *Strawbridge,* (3 *Cranch,* 267;) *Bank of U. S.* v. *Deveaux and others,* (5 *Id.* 84;) *Commercial and Railroad Bank of Vicksburgh* v. *Slocomb and others,* (14 *Pet.* 60,) were reviewed, and so far as they conflicted with the above views, were overruled. It is now well settled in the United States court that the corporation alone is treated as the party, for all purposes, and that the court does not look behind to see where the corporators reside.

The question we are considering arose in *The Washington Bank of Westerly* v. *Palmer,* in the superior court of New-York. (2 *Sandf.* 686.) It was there held, in a well considered opinion, that a stockholder in an incorporated company, is not a party to the action, nor a person for whose immediate benefit it is prosecuted, within the meaning of section 399 of the code, and is therefore a competent witness in favor of the corporation. And

the same doctrine was again repeated by the same court in *The New-York and Erie Railroad Co.* v. *Cook*, (2 *Sandf.* 732.)

The 399th section of the code is the same as the first proviso in Lord Denmam's act, 6 and 7 Victoria, ch. 85, § 1. The expositions of the British statute by their courts, are in conformity to the views above expressed. (*See Hart* v. *Stevens*, 6 *Ad. & El. N. S.* 937 ; *Hill* v. *Kitching*, 3 *Man. Granger & Scott*, 299.)

I am aware that in the case of *The President of the Bank of Ithaca* v. *Bean and others*, the supreme court for the 6th district decided that the president of a bank, who is also a stockholder in the bank, can not be a witness for the bank in an action by the bank against a third person. (2 *Code Reporter*, 133.) But in that case the president was *a party to the action*, and for that reason he was liable to be proceeded against under the sixth chapter, and was expressly exempted from the operation of section 398. There are some remarks by Mr. Justice Mason, in delivering the opinion of the court, indicating that in his opinion a stockholder was a person for whose benefit the action is brought within the meaning of sections 396 and 399. But those remarks were not necessary to a decision of the case, and can not, in my judgment, be supported.

Wells was a competent witness under the code, and consequently, the judgment of the circuit court should be affirmed.

PAIGE, J. concurred.

HAND, J. dissented.

Judgment affirmed.

[ST. LAWRENCE GENERAL TERM, September 1, 1851. *Willard, Paige* and *Hand*, Justices.]