*307 The opinion of the court was delivered by
Ranney, J.
The action below was brought upon a bill of exchange for $3,000, drawn by Morgan & Co., upon Marshall, Burton & Co., in favor of W. W. Witherell, and payable on the 4th day of June, 1849, at the office of H. J. Morgan in the city of New York. The bill was indorsed by Witherell to the plaintiff’s intestate, and by him to the defendant in error. It was duly protested at maturity for non-payment, and the following notice sent by the notary to Townsend :
“ $3,000. “ New York, June 2, 1849.
“ Please take notice, that a bill for $3,000, drawn by Morgan & Co., on and accepted by Marshall, Burton, & Co., dated San-dusky City, Ohio, February 19, 18-19, and indorsed by you, is this day protested for non-payment, and the holders look to you for the payment thereof. Yours, etc.,
Pierre M. Irving, Notary Public,” etc.
“To Wh. Townsend.”
It was admitted that this was the only notice ever sent to Townsend, who resided in Sandusky City, Ohio, and, if this was insufficient to charge him, it seems unnecessary to decide any of the other questions raised in the case. Whether the protest was sufficient evidence of a demand of payment or not, is entirely immaterial, since the deposition of the notary was taken and read in evidence, by which the demand *was fully proved. We do not intend, however, to imply a doubt that the protest alone was sufficient for the purpose, without this evidence. In Case v. Heffner, 10 Ohio, 187, it was held, that such a bill might be protested at the option of the holder, and if protested, the demand might be proved by the protest. And although it is true, in a strict and technical sense, that the term protest, when used in reference to commercial paper, means only the formal declaration drawn up and signed by a notary, yet, in a popular sense, and as used among men of business, it includes all the steps necessary to charge an indorser. Caddington v. Davis, 1 Com. 186. And this is in strict accordance with the general principle, which makes any act of a public officer which presupposes the existence of other acts to make it legally operative, presumptive proof of the latter. Ward’s Lessee v. Barrows, ante.
*308 Upon the question of notice, the court charged the jury that it would be sufficient if it informed Townsend of the fact of presentment at the maturity of the draft, that demand of payment was then made, and that it remained unpaid. That a notice made out and dated on the 2d day of June would not be sufficient; but if the demand was made, and the notice made and sent on the 4th day of June, it would be sufficient, although it was by mistake dated on the 2d day of June.
There can be no doubt, as the notice was in writing, and about which there was no dispute, that its sufficiency was a question of law, to be disposed of exclusively by the court. Bank of Columbia v. Lawrence, 1 Pet. 578; Rhet v. Poe, 2 How. 457; Harris v. Robison, 4 How. 336; Gilbert v. Dennis, 3 Met. 495; Pink-ham v. Macy, 9 Ib. 374; Remer v. Downer, 23 Wend. 620; Rawson v. Mack, 2 Hill, 587; Brenzer v. Wightman, 7 Watts & Berg. 264.
Was the notice sufficient? This depends entirely upon the question, whether the ‘ statement it contained that the demand was. made two days before the maturity of the bill, makes it insufficient. In the 10th American edition of Chitty on Bills, 469, it is said : “ The notice should inform the parly *to whom it is addressed, either in express terms or by necessary implication, or, at. all events, by reasonable intendment, what the bill or note is, that it has become due, that it has been duly presented to the drawer or maker, and that payment has been refused.”
Mr. Justice Story, in his work on Promissory Notes (sec. 348), says: “It is indispensable that it should, either expressly or by just and natural implication, contain, in substance, the following requisites : 1. A true description of the note, so as to ascertain its identity; 2. An assertion that it has been duly presented to the maker at its maturity, and dishonored; 3. That the holder or other person, giving the notice, looks to the person to whom the notice is given, for reimbursement and indemnity.” I do not quote the whole of this paragraph, with the view of giving it an unqualified approval. It is very clear that what is here laid down as the third indispensable requisite of the notice, serves no substantial purpose, and is therefore entirely unnecessary. The few adjudged cases, or rather dicta, that had given countenance to the idea, have been entirely repudiated in the later authorities, and fully justify the assertion of Lord Denman, in the late case of Furze v. Sherwood, *309 2 Adol. & Ellis, N. R. 388, that “ in no case has the absence of such information been held to vitiate a notice in other respects complete, and which has come directly from the holder.” Indeed,. Judge Story, in a subsequent section (353) admits, that “by the more recent authorities, although in strictness it may be required, where the language is otherwise doubtful or uncertain, yet that it will ordinarily be presumed-, where the notice is in other respects sufficient. For sending'notice of the dishonor would seem in itself to be sufficient to show that the party means to rely on the indorser for reimbursement or indemnity, unless the language of the instrument naturally or necessarily repels that presumption." Nor do the loose statements of the learned author stop here; for while it is still said (sec. 350) that the statement that the note has been’ duly presented and dishonored, “ is essential to ^establish the claim, or right of the holder, or other party giving notice; for otherwise, he will not be entitled to any payment from the indorser,” and that without it, “ the notice would seem to be fatally defective” (sec. 354) ; yet in another part of this last section, it is assorted, “ that the rule adopted in the American courts is far more liberal than that generally maintained in the English courts, and proceeds upon the ground, that it is sufficient to state in the notice that the note has not been paid, and either expressly or by implication, that the holder looks to the indorser for reimbursement or indemnity.”
We know of no such diversity of decision in the courts of the two countries. In both it is held insufficient to state merely “that the note has not been paid,” as that alone, in the language of Judge Story himself (sec. 350), “ affords no proof whatsoever that it has been presented in due season, or even that it has been pre.sented at all; ” and in both it is held unnecessary to state that the holder looks to the indorser for indemnity. I have already quoted the language of Lord Denman in Furze v. Sherwood; and as a specimen of the general holding in the courts of this country, it must suffice to reler to the ease of the Bank of the United States v. Carneal, 2 Pet. Sup. Ct. 543, where the objection was taken that the notice was not sufficient “unless the'party sending it also informs the indorser that he is looked to for payment.” The court say that the notice of demand and dishonor “ necessarily implies such responsibility over; ” and that they “ know of no rule that requires any formal declaration to be made to this effect.” Before *310 the great case of Solarte v. Palmer was decided, the judges in Westminster Hall were very far from being a unit upon the question whether the notice must show upon its face that the note or bill had been presented at maturity and dishonored; or whether it would not be sufficient to state simply that it remained unpaid. The Ring’s Bench, in Hartly v. Case, 4 Barn. & Cress. 339, had already held that, while no particular form of words was necessary in such notice, yet the language used must be such as to convey notice to the party what the bill is, and that payment of it had been refused *by the acceptor. Solarte v. Palmer originated in the common pleas and at nisi prius. Lord Tcnterden instructed the jury that a notice which only communicated the fact of nonpayment was insufficient; and the verdict was for the defendant. The plaintiff excepted to this opinion, and it was overruled by the court, and judgment given for the plaintiff. This judgment was removed by writ of error to the court of exchequer chamber, and, with the unanimous concurrence of all the judges, reversed. 7 Bing. 350.
Ch. J. Tindal, who delivered the leading opinion, says : “ The notice should at least inform the party to whom it is addressed, either in express terms or by necessary implication, that the bill has been dishonored. In this notice we think no such information is conveyed in terms, or is to be necessarily implied from its contents. It is perfectly consistent with this notice that the bill had never been presented at all.”
The case was then appealed by the plaintiff to the House of Lords, where the judgment of the court of exchequer chamber was affirmed, with the concurrence of all the judges summoned to hear the argument, and of Lord Chancellor Brougham, who remarked, “that the case was too clear for an appeal.” 1 Bing. N. C. 194.
This case has since been followed in Boulton v. Welch, 3 Bing. N. C. 683; Phillis v. Gould, 8 Car. & Payne, 335; Strange v. Price, 10 Ad. & Ell. 125; Messenger v. Southey, 1 Man. & Gran, 76; and Furze v. Sherwood, 2 Ad. & Ell. N. T. 338; and contains the unquestioned doctrine upon the subject acted upon by the English courts at this day. That they have been quite as liberal in implying notice of dishonor from the language used, when it was not expressly given, as the integrity' of the rule would permit, will bo very manifest, I think, from an examination of the cases of Lewis *311 v. Gomperts, 6 M. & W. 339; Houlditch v. Cauty, 4 Bing N. C. 411; Hedges v. Steavenson, 2 M. &. W. 799; Grugeon v. Smith, 6 Ad. & Ell. 499; Cook v. French, 10 Ad. & Ell. 131, and Stocken v. Collins, 9 C. & P. 653.
*The first American case to which I shall refer, and in which the question was directly made, is that of Gilbert v. Dennis, in the Supreme Court of Massachusetts, 3 Met. 498. Ch. J. Shaw delivered the opinion, and after carefully canvassing the English and American authorities, for the purpose of arriving at the true rule upon the subject,'he concludes thus :
“¥e take that rule to be, that as the indorser is liable only conditionally for the payment, in case of a dishonor of the note at its maturity by the maker, and notice thereof to the indorser, in order to charge him, notice of such dishonor must be given him by the holder; that mere notice of non-payment, which does not express or imply notice of dishonor, is not such notice as will render the indorser liable.”
The same question afterward arose, and was decided in the same way, in Pinkham v. Macy, 9 Met. 174.
The first case in New York bearing upon the question, is that of Ontario Bank v. Petrie, 3 Wend. 456, cited and relied upon by counsel for the defendant in error. The notice was dated on the day the note matured, and stated that the demand was made, and payment refused last evening. This was held sufficient to submit to the jury to determine whether the indorser was misled by it. It is difficult to distinguish this case from the one now under consideration, and quite as difficult to reconcile it with acknowledged principles, unless there was something more in it than appears in the report. It was surely inadmissible, when no extraneous facts were to be found, to submit the legal effect of the written paper to the jury; and quite impossible, it seems to us, when the responsibility was not thus shifted from a tribunal that gives reasons to one that gives none, from the paper alone to say, that the indorser was informed of the dishonor of the note. The case of Smith v. Whiting, 12 Mass. 6, is cited by the court. But that was a case of misdescription of a note, payable at a bank, upon which no demand of the maker was required; and in fact the notice ^itself furnished the means of its own correction; and the court very correctly held the error to be immaterial.
But whatever may be thought of this case, all difficulty has been *312 removed by later decisions in that state, and the doctrine carried quite as far as in England or Massachusetts. In the case of Dole v. Gold, 5 Barb. Sup. Ct. 490, the notice informed the indorser that the note “ indorsed by you is due this day, and has not been paid and it was decided to be insufficient—the court holding that the sufficiency of a notice to an indorser, when .there is no dispute about the facts, is a question of law to be determined by the court, and which could not be avoided by the court, “ under any pretenso of- submitting it to a jury, to say whether the party could understand what was meant, or whether he was misled by it or not;” that in such case, the notice 11 shows upon its face what information it gave the indorser, and the court must decide whether it is sufficient or not;” and that it is insufficient, unless in express terms, or by necessary implication, it informed him that the note had been duly presented and payment refused, and it had thus been dishonored.
In the case of Wynn v. Alden, 4 Denio, 163, the demand was made, and notice given at the proper time, but the notice was without date. It was insisted that it might be inferred from it that the demand was made at the maturity of the note. But the court did not feel authorized to do so, and thus exjDress their conclusion :
“ This notice only states that the note was presented this day, and payment required. But the notice being without date, it is impossible to ascertain from the paper itself, what day in particular was intended. It may have been some day before the note fell due, or a day subsequent to that time; and from what is written, we may as well infer one or the other, as to infer that the true day of payment is intended. It is not unlikely, looking to what is usually done in such cases, that the person who drew this notice intended to state that the payment of the note had been demanded at the time of its maturity. But this is mere conjecture, for what was ^written does not apprise us of any such intention. The notice was insufficient, and the judgment was erroneous.”
The question has been settled in Pennsylvania, in' a case in every particular in point. Etting v. The Schuylkill Bank, 2 Barr, 356. The notice was in fact made out and sent on the day the note fell duo, but it bore date the evening of the (fay preceding the last day of grace, and it was held defective. Ch. J. Gibson, who delivered the opinion of the court, after remarking that the indorser, was informed by it of nothing more than that the note had been presented *313 Tor non-payment before it was due, that he had a right to presume that the blunder would be discovered and the note again presented .at the day, of the event of which he would be informed, hnd that ¡hearing no more about it, he had a right to repose on the belief •that the note was paid, with characteristic energy of expression •adds : “It is true, it had in fact been presented for payment at the proper time, and the notice was misdated by mistake ; but how was he to know that ? He might as well presume that the notary had mistaken the day of payment as that he had mistaken the date of the notice. But with any mistake as to either he had nothing to do. He was entitled to have explicit notice of the very truth; and the consequences of wanting it are not to fall on him who was not the cause of them, but on the holder, by whose agent they were ■occasioned.”
It thus appears that in England, and in the great commercial states of Massachusetts, New York, and Pennsylvania, the rule is 'firmly established that the holder, in order to charge the indorser, must inform him, in the notice he gives, that the note or bill has been dishonored ; that it will not be inferred from mere notice of non-payment, nor from a notice showing a demand and refusal without specifying the time it was made, nor from one showing it made before the maturity of the bill; and we apprehend the rule has its foundation in -the very elements of the contract into which the indorser enters, and is indispensable to the protection of his rights. He does not undertake absolutely to pay the ^amount of money named in the instrument. His promise is conditional, and the conditions are as clearly a part of the contract as though written over his own signature. He promises to pay it provided the holder, if payable at large, at the maturity of the instrument, presents it to the maker or acceptor for payment, and it is refused; or if payable at a specified place, if the latter neglects to have, funds there, to take it up; and, in either case, lie is immediately notified of the fact that it is thus dishonored. Information of the dishonor is as explicit a condition pf his contract as presentment to the maker or acceptor, and often quite as important to him ; and it can no more become absolute, and he be made liable, by neglecting the one than the other. He has contracted to know, and has a right to know, that th<j paper has been presented to the party primarily liable for payment, and been refused; and a right to demand that the information shall be so definitely given as to *314 enable him to fix .the liability, and upon taking it up, to coerce-payment from those back of him on it; which can only, be done-when he is advised that the demand was made at a time when the maker or acceptor was bound to pay, and when a failure to do so-would dishonor the paper.
This information need be given in no set form of words. Neither technicality nor formality belongs to the subject. The language used is good, not only for what it positively expresses, but also for-what it fairly implies. Nor does the rule, as now settled, in the least infringe upon the doctrine laid down in numerous cases, that immaterial variances or mistakes in the description of the instrument, or other particulars, not calculated to mislead the indorser,- and which may be corrected by the facts within his own knowledge, will not vitiate the notice. To this class of cases belongs the case of Mills v. The United States Bank, 11 Wheat. 431; although, from some of the language used in the opinion, it is often cited to show that notice of non-payment would alone be sufficient. The indorser is entitled to notice of dishonor, because his contract provides for it, and because it is material to his interests; but it is-enough when he has it substantially, *and with such certainty as would justify a reasonable and prudent man in acting-upon it; and he has no right to stand upon the form in which it comes 'to him, or to shut his eyes to the facts within his own knowledge, and rely for a defense upon the mistakes or omissiousof the holder of the paper, when they could not have resulted to his prejudice.
An application of these principles to the case in hand, makes it easy of determination. The bill having been made payable at a specified place, it was sufficient to have presented it there for payment. This was in fact done, and at the proper time. But Townsend was informed, by the notice sent him, that it had been protested for non-payment two days before it fell due, and at a time when the acceptors were not obliged to pay it; and when, by no possibility, it could have been dishonored for a failure to make payment. He was, therefore, never informed of the dishonor of the bill; and, as in case of Etting v. Schuylkill Bank, hearing of no demand after the bill matured, he had a right to repose in the belief that it was paid. The positive statement of the notice that it was then protested, left him no room to infer a presentment at the proper time, and gave him no information without proceeding *315 upon tbe blindest conjecture, upon which he could determine his own liability, or proceed to fix that of the indorser who stood before him upon the bill. With these views of the law we are o.f opinion the learned judge in the court below erred in his charge-to the jury upon this point; and for that cause,
The judgment must be reversed, and the cause remanded for-further proceedings.