President, Directors and Company of the Cabot Bank *vs.* Levi Russell.

ɪn an action on a promissory note, purporting to be indorsed by the defendant, a guaranty signed by the defendant, on the same note, is admissible in evidence of the genuineness of the indorsement.

A promissory note dated at Hadley, and payable at a bank in an adjoining town, was presented at the bank at maturity by a notary, and dishonored, and the notary, being told by the cashier that the indorser lived at Hadley, addressed by mail a notice to him at Hadley, not knowing that there was a distinct post office in the same town, at North Hadley, three miles nearer the indorser's residence, and at which he usually received his letters.  *Held,* that the notice was sufficient to charge the indorser.

This action was brought by a bank established at Chicopee, against the defendant, as indorser, and also as guarantor of a promissory note for $300, made by Zenas Cook, dated " Hadley, June 17th 1851," and payable in ninety days after date to the defendant or order " at the Holyoke Bank ; " and bearing the following indorsements : " Levi Russell."  " N. Hadley, September 22d 1851.  I hereby guaranty the payment of the within note.  Levi Russell."

At the trial in the court of common pleas at October term 1853, there being no consideration expressed or proved to support the guaranty, *Mellen*, J. ruled that the guaranty was void; and the action was tried upon the indorsement.

The grounds of defence relied on were, 1st. That the indorsement was not genuine; 2d. That the defendant had not due notice of the dishonor of the note.

It was admitted that the defendant signed the guaranty on the back of the note. The plaintiff contended that this fact was evidence tending to show that the defendant admitted the indorsement to be genuine; and the judge ruled that " the signature of the guaranty was competent evidence from which the jury might draw such inferences, on this point, as they might think reasonable."

Upon the question of notice, the evidence was thus : " The note was protested for nonpayment at its maturity, and notice was sent by mail from Northampton, superscribed to the defendant at Hadley. There was then, and had been for some fifteen years, a post office at North Hadley, three miles north of the Hadley office, but within the town of Hadley; a daily mail went from Northampton to Hadley, thence to Amherst, and thence to North Hadley. The defendant had always lived in North Hadley, about two miles north of the post office there, and five miles from the Hadley office, and always received his letters at the North Hadley office; and he had long been well known in that vicinity and at Northampton. The notary who protested the note stated that, upon presenting the note at the bank and finding no funds, he was told by the cashier that the indorser lived in Hadley, and accordingly addressed a notice to him at Hadley on the evening of September 18th. The notary was personally ignorant of the place of residence of the indorser, and also of the fact of there being a post office at North Hadley."

The defendant contended that the notice sent to Hadley was not sufficient to charge him as indorser; but the judge ruled otherwise ; the jury returned a verdict for the plaintiffs ; and the defendant alleged exceptions.

This case was argued and decided at Boston in January 1855.

*R. A. Chapman,* for the defendant. 1. The mere fact of sign-ing the guaranty was not evidence of an admission of the gen-uineness of the indorsement. It depends on the motive with which it was signed.

2. There was not due notice to the indorser, nor due diligence to find him. Story on Notes, § 343. Story on Bills, §§ 297, 298, 299. Chit. Bills, (10th Amer. ed.) 472. *Cuyler* v. *Nellis,* 4 Wend. 398. *Ireland* v. *Kip,* 10 Johns. 493. *Bank of Utica* v. *De Mott,* 13 Johns. 432. *Reid* v. *Payne,* 16 Johns. 218. *Shed* v. *Brett,* 1 Pick. 406. *Peirce* v. *Pendar,* 5 Met. 352. *Wheeler* v. *Field,* 6 Met. 290. *Phipps* v. *Chase,* 6 Met. 491. *Morton* v. *Westcott,* 8 Cush. 425. *Porter* v. *Judson,* 1 Gray, 175. *Walter* v. *Haynes,* Ry. & Mood. 149.

*J. Wells,* for the plaintiffs.

SHAW, C. J. The first exception is, that the court ruled that the signature of the guaranty was competent evidence from which the jury might draw such inferences, on the point of the genuineness and acknowledgment of the signature, as they might think reasonable. As the admitted act and signature of the defendant, we think it was competent evidence against the defendant; if any instruction was desired, as to its legal effect, it should have been asked for.

The other point is one of great practical importance. It is well settled that, when the indorser lives in a different place from the holder, notice by mail is sufficient; and that such notice, rightly directed and addressed to the indorser, is sufficient evi-dence of notice, without proof that it reached the indorser. *Munn* v. *Baldwin,* 6 Mass. 316. *Shed* v. *Brett,* 1 Pick. 401. This is a rule of too much importance to be doubted or drawn in question. The difficulty arises where the domicil or place of business of the indorser is doubtful or uncertain ; where there are several post offices in the same town; where the indorser is nearer the post office of a town other than the one in which he resides ; where he is accustomed to receive his letters at one or several different post offices, in the same or another town. See *Bank of Columbia* v. *Lawrence,* 1 Pet. 578 ; *Bank of the United States* v. *Carneal,* 2 Pet. 543 ; Story on Notes, §§ 322 *& seq.*

The nearest approximation to a general rule, to be deduced from the cases, seems to be this; that whenever circumstances of the foregoing nature exist, to take the case out of the ordinary one of a fixed and known residence of the indorser and a regular mail to the established post office of such place, it is the duty of the holder, or of the notary or other officer or agent employed by him, to make reasonable inquiries at the proper sources, to ascertain the residence or place of business of the indorser; at what post office, one or more, in the same or another town, he is accustomed to receive his letters; and, in the absence of such information, to find out the post office nearest, or in some other respect most convenient to his residence; and then address and forward the notice by such mail, and to such post office, as that it would be most likely to reach him certainly and promptly. ·

Even the rule that where notice is to be given to an indorser in the same town, it must be personal, and ought not to be by mail, which seems to be as nearly fixed by judicial decision as such rule can be, (*Eagle Bank* v. *Hathaway,* 5 Met. 215 ; *Phipps* v. *Chase,* 6 Met. 492 ; *Phipps* v. *Milbury Bank,* 8 Met. 79,) may perhaps, under peculiar circumstances, admit of exceptions. Shall the party notifying and the party to be notified be held to live in the same place, within this rule, because they live within the territorial limits of one of the large townships of New England, and all under one municipal government, and known by one name as a town, but where there are several distinct villages, each with its post office, churches, schoolhouses, and other incidents of a distinct community ? Such towns exist, having many post offices, to the extent of eight or more, one bearing simply the name of the town, others with the name of the town and with some local designation, as "east" or "north," "upper" or "lower," and the like, and others with entirely distinct names, as post offices.

In the case of *Chicopee Bank* v. *Eager,* 9 Met. 585, it appeared that there were then at least three large trading and manufacturing villages within the territorial limits of Springfield, each having a post office, with the usual incidents of a distinct settlement. A note was payable at the Chicopee Bank, and the

indorser lived in Cabotville; and notice was sent by mail to him at Cabotville. It was in evidence that such was the usage of Springfield; and as the note was payable at the Chicopee Bank in Springfield, it was considered that he was bound by the usage. The court there held the notice good, but placed the decision upon the ground of usage, which brought the case clearly within the rule as established by adjudicated cases; and so it became unnecessary to give an opinion whether such a notice would have been good or not without such usage. Had the fact of usage been otherwise, or the defendant not been held to have assented to it, upon the general principles previously laid down on the subject, there would have been at least plausible ground for arguing that the notice was good.

In the present case, the note was payable at the Holyoke Bank, which is in Northampton. The note, belonging to the plaintiffs in another town, was presented at the Holyoke Bank at maturity, by a notary employed by them, and was dishonored. He inquired of the cashier where the indorser lived, and was told "at Hadley." This was the truth, and was an answer not calculated to put him on further inquiry, if he did not know in what part of Hadley the defendant lived, or that there was more than one post office in that town; and he testifies that he did not. As many, perhaps most, interior agricultural towns in Massachusetts have but one post office, we cannot consider it as of itself proof of negligence, that a notary public in another town did not know that there were more in Hadley. If there had been but one, the notice directed to the defendant generally at Hadley, he not being in the habit of receiving his letters at any post office in another town, would have been good, in whatever part of that town he had his residence. See *Morton* v. *Westcott*, 8 Cush 425; *Downer* v. *Remer*, 21 Wend. 10, and 23 Wend. 620

*Exceptions overruled.*