THE PRESIDENT, DIRECTORS AND COMPANY OF THE BANK OF CHENANGO *against* HYDE, JOHNSON AND W. WHITNEY.

ASSUMPSIT, tried at the Chenango circuit, August, 1823, before NELSON, C. Judge.

H. J. & W drew a promissory note to be discounted at the Chenango Bank, and payable to the bank. On the bank declining to discount it, B., an attorney at law, at the request of H., advanced him the money, and it was agreed between them, that the note should be left at the bank, as the agent or trustee of B., for his security. B. afterwards sued and recovered against H. for *money lent;* but could not collect his judgment. He then brought an action in the name of the bank against all three of the makers; *held,* that he should recover; that this was not the *purchase* of a chose in action by an attorney at law, and therefore void within the act; (sess. 41, ch. 259, s. 1, &c.,) that the note was not void and without consideration, and was properly left as security; this not changing the liability of the parties from what it would have been, had the note been regularly discounted by the bank; that the bank did not exceed its powers in taking the note as agent or trustee for B., nor was the judgment against H. a bar to the suit upon the note.

UTICA,
Aug. 1825.

Bank of Che-
nango
v.
Hyde.

The suit was commenced in January term, 1821, and was brought to recover the amount of a joint and several promissory note made by the defendants, dated January 1st, 1819, for $300, payable to the Bank of Chenango, or order, at 63 days. Plea, the general issue.

The execution of the note being admitted on the trial, J. L. Fenton, cashier of the bank, a witness for the defendant testified that Hyde, one of the defendants, called at the bank, about the date of the note, and presented it for discount. That it was not discount day; and the note was, beside, objected to as not being in the form required by the rules of the bank. Hyde went in pursuit of James Birdsall, who came to the bank, and it was agreed between Birdsall and Hyde, that Birdsall should advance the amount of the note to Hyde; that the note should be delivered to the bank to be retained by them as the agent of, and as a security to Birdsall for the money advanced. Hyde said he would endeavor to procure another note, satisfactory to the bank, in two weeks, and present it for discount. The witness gave encouragement that this might be done; and Hyde agreed, if it was, that the money should be paid to Birdsall, for the money advanced by him. The witness did not know that Hyde was principal in the note, except from his name appearing first on the note, which was usually the case with principals upon notes presented to the bank

The defendants' counsel then produced a note, which he received of Birdsall to use on the trial, signed by Hyde, one of the defendants, dated March 8th, 1819, payable to the defendant, Johnson, or order, at the Bank of Chenango, 63 days after date, for $300, and endorsed by Johnson and Thomas Whitney. The witness stated that about 90 days after the first transaction, Birdsall called at the bank, and offered this last note to be discounted, which was declined. That the bank never had any interest in the notes, except as the holder of the first note by agreement, as trustees or agents of Birdsall, as he had before stated. That the first note was delivered over to Birdsall for prosecution, after the bank had refused to discount the second note, and that the suit was commenced in the name of the bank by their con

sent, and for the benefit of Birdsall, under the agreement which he had stated.

It was admitted, that before this action was commenced, a suit was instituted by Birdsall against Hyde, for the money advanced by him at the bank, in which Birdsall declared for money lent only, and obtained judgment in August term, 1819; that an execution had been issued to the sheriff of Broome, who had levied $62, besides his fees, and returned, as to the residue, *nulla bona*.

The defendants' counsel then read in evidence a letter from Birdsall to Hyde, dated March 2d, 1819, thus: "Your note has not been sent to the bank as was agreed, and, of course, I am compelled to lie out of my money that I advanced. It is now due, and immediate payment is expected:" also another letter from the same to the same, dated April 7th, 1819, thus: "The bearer informs me, that the course of business in our bank was not accurately understood by you and your friends; and that probably in consequence of that, you had not met the expectations of the bank. We discount at 63 days, notes drawn by an individual or firm, and endorsed by two respectable endorsers; and it is expected, in every case, that the note will be paid up when due; and if the bank is in a situation to discount, notes so paid will have a preference. If not paid when due, the note is protested, thus adding to the expense, and evidencing the want of punctuality in the maker. The paper of those who suffer their notes to run over the time, cannot be considered so good as new paper. The bank, in three or four instances, have discounted joint notes, to save the drawers, who resided at a distance, from a second journey; and in a few instances in which they have done so, they have found it disadvantageous to the bank; and, of course, no notes in that form can be discounted hereafter. When notes have run over the time of payment, no new notes for the same persons can be discounted, till the old are paid up. These are the regulations in almost all the banks; and in one like ours, with a small capital, they are indispensably necessary; as without punctuality in the customer, the bank cannot do business advantageously. The loan of the 300 dollars that I made to you was a **very**

UTICA,
Aug. 1825.

Bank of Che-
nango
v.
Hyde

unfortunate one for me.   For two weeks, the board would have discounted a note in proper form ; but as none came, I have been compelled to lie out of the money, when I could very illy spare it.  ˙ I cannot procure the discount of the one you sent me.  · The $5 was received and will be applied on your note.   I have been obliged to borrow the money from individuals, that I lent you, and am now extremely in want of it.   If you can pay it next Tuesday, it will save. me the trouble of borrowing it over again, as I shall then have to pay it where I have borrowed it; and longer than that time it is impossible for me to wait.   It is an object to obtain foreign money, particularly current·: and if your notes in the bank could be paid up next week, I presume the board would renew them for a part or the whole."

Thomas Whitney, a witness for the defendants, testified that in the winter and spring of 1819, and for 6 or 9 months afterwards, Hyde was in good circumstances, and able to pay the money; but· in the latter part of that year, and about the time when Birdsall's execution issued, became embarrassed, and was understood to be insolvent; though it was understood that he had property concealed, but did not pay debts; and since that period, he had been the principal part of the time in possession of personal property, which he used and claimed as his own, sufficient to satisfy the judgment.

The defendants' counsel offered to prove by this witness, that the second note was made and endorsed for the benefit of Hyde alone, as a circumstance from which to infer that the first was for his benefit, and the other defendants mere sureties.   This testimony was objected to by the plaintiffs' counsel and overruled.

It appeared that the former suit was commenced April 23d, 1819; the execution issued September 28th, 1819; and that Hyde's personal property was sold in January, 1820; that an *alias fi. fa.* was issued July 26th, 1822, upon which $41 54 was collected, and the execution returned *nulla bona,* as to the residue.

It was admitted that Birdsall, at the time he loaned or advanced the money, was an attorney and counsellor of this Court.

Upon this evidence, the defendant's counsel insisted, that the plaintiffs were not entitled to recover; that Birdsall, being an attorney, had no right to advance the money; that it was not necessary that this should be pleaded. But the Judge decided that the plaintiffs were entitled to recover; and the jury, under his direction, found for the plaintiffs $339 43.

It was agreed that if this Court should be of that opinion, the verdict should stand; otherwise, a new trial should be granted.

*J. A. Collier*, for the defendants, insisted 1. That the advance of the money by Birdsall, who was an attorney, whether it be considered as a purchase of the note, or that this was a pledge, was contrary to the statute, and the whole contract was consequently void; and cited 1 R. L. 417, and Laws N. Y. sess. 41, ch. 259, s. 1.

2. This defence was admissible under the plea of *non assumpsit*; and no special notice necessary. (1 Chit. Pl. 469, 70, Lawes' Pl. *assumpsit*, 520.)

3. The note having been drawn for discount at the bank, and rejected, was invalid, and without consideration; and no suit can be maintained by the payees; nor could one of the makers, without the knowledge or consent of the others, change the contract by virtually substituting other payees; or convert the note to any different object, than was contemplated at the time of making it. (*Marvin* v. *M'Cullum*, 20 John. Rep. 288. *Denniston* v. *Bacon*, 10 id. 198.)

4. The bank being incorporated for a definite and distinct object, could not legally be trustees for Birdsall, in business disconnected with their banking concerns; and going, as they do in this business, beyond the scope of their corporate powers, no suit can be maintained in their names. (1 Plowd. 103. 1 Kyd on Corp. 72. *Beatty* v. *The Mar. Ins. Co.* 2 John. Rep. 109. *The People* v. *The Utica Ins. Co.* 15 id. 358. *N. Y. Firm. Ins. Co.* v. *Sturges*, 2 Cowen's Rep. 664.)

5. Birdsall, by prosecuting Hyde to judgment and execution, for money lent, treated the transaction, as in truth it was, a contract between himself and Hyde; and is estop-

.UTICA,
Aug. 1825.

Bank of Chenango
v.
Hyde.

ped to consider it an advance upon the note, or as a contract by which Johnson and Whitney were bound.

6. The judgment in the separate suit against Hyde was an extinguishment of any demand against him upon the note and afforded him a valid defence to this suit. The defendants were, therefore, entitled to judgment, as the plaintiffs failed to show a joint liability in all. *Manahan* v. *Gibbons*, 19 John. Rep. 109. *Robertson* v. *Smith*, 18 id. 459.)

*B. F. Butler*, contra, cited, as to the first point, *Williams* v. *Matthews*, (3 Cowen's Rep. 252,) and *Van Rensselaer* v. *Sheriff of Albany*, (2 id. 501.)

As to the third point, *Brown* v. *Mott*, (7 John. Rep. 361;) *Powell* v. *Waters*, (17 id. 176 ;) and *Chenango Bank* v. *Curtiss*, (19 id. 326.)

As to the sixth point, *Drake* v. *Mitchell*, (3 East, 251 ;) *Chipman* v. *Martin*, (13 John. Rep. 240 ;) and *Day* v. *Leal*, (14 id. 404.)

*Curia*, per SUTHERLAND, J.   There is no force in the objection, that the advance of the money, by Birdsall to Hyde, under the circumstances of this case, was a violation of the act of April 1st, 1818, prohibiting attorneys and counsellors from purchasing choses in action, or lending or advancing money upon them, for the purpose of having them placed in their hands, or the hands of any other person for prosecution. It was a mere loan of money, upon a security which had no legal existence or validity, before it was placed in the hands of Birdsall. In the hands of Hyde, it was not an available instrument. He was one of the makers ; and it became a promissory note, or chose in action, only on its delivery to Birdsall, or the bank for his use. If this was a purchase within the statute, then an attorney can in no case lend money, and take a note as security. That the instrument was drawn and signed by the makers, before the bank or Birdsall were applied to for the money, does not alter the transaction. It took its inception when it passed to them ; and if there had been usury exacted upon the transfer, it would have destroyed the note in the hands of any subsequent *bona fide* holder. (*Powell* v. *Waters*, 17 John

176, *Munn* v. *The Commission Company*, 15 id. 55. *Marvin* v. *M'Cullum*, 20 id. 288.) The facts in the case conclusively repel the supposition, that the consideration or inducement on the part of Birdsall, for advancing the money, was the placing the note in the hands of the bank for collection. I apprehend the statute, in prohibiting the purchase of choses in action, means pre-existing securities, or demands. The term buying and purchasing can, in strictness, be applicable to such only. · On this ground, therefore, without deciding whether the statute prohibits the purchase of choses in action by attorneys or counsellors, when *they are not purchased for the purpose of collection*, it is clear that it has no application to this case.

Nor is the validity of the note affected by the circumstance, that it was drawn for the purpose of being discounted at the Bank of Chenango. It was made to raise money on. It did not change the responsibility of any of the parties to it, that the money was advanced by Birdsall, instead of the *bank*. The case of *Powell* v. *Waters*, (17 John. 176,) is decisive upon this point. In *Denniston* v. *Bacon*, (10 John. 198,) which was cited by the defendant's counsel, the contract was essentially changed; and on that ground, the note was held invalid. The Bacons made their note to Gere and Elliot, the latter informing them by letter, that he had made an agreement at the bank, that they should discount it; and that 20 per cent. should be paid in 56 days, 20 per cent. in 112 days, and the residue in 168 days. When the note was offered, the bank refused to discount it, and Elliot then endorsed it to Denniston, who brought the suit for Elliot's benefit, as it was expressly admitted. The Court held, that between those parties, the letter of Elliot, and the note, formed but one contract; and that the defendants were not responsible, because the note was not discounted on the terms stated in the letter, but the whole amount was exacted at the expiration of 60 days. Had it been discounted on the terms originally proposed, by another bank, or an individual, the transaction would not have been questioned. The case of *Marvin* v. *M'Cullum*, (20 John. 288,) which was also cited for the defendants, has no application to this point.

But it is said, the suit could not be maintained in the name of the bank; that they could not legally be trustees for Birdsall, this not being within the scope of the powers conferred by their act of incorporation. The general proposition, that a corporation can have no other capacities than such as are necessary to carry into effect the purposes for which it was established, is undoubtedly true. (1 Kyd on Corp. 70. *N. Y. Firem. Ins. Co.* v. *Ely*, 2 Cowen's Rep. 699.) But I apprehend the bank, in this case, has not transcended its powers. Upon the face of the transaction there is nothing exceptionable. It appears to be a loan by a bank upon a promissory note; but the proof shows that it was in truth a loan by Birdsall; and the reason of the note being in the name of the bank, and left in their possession, is satisfactorily accounted for. It was intended to be discounted by the bank; but they refusing to discount it, Birdsall advanced the money, and now brings the suit in the name of the nominal payees. The question is, not whether the bank has a general authority to act in the capacity of a trustee; but whether the *bona fide* holder of a promissory note, in which the bank is nominally the payee, has a right to sue in the name of the bank. I apprehend, if the bank had refused the use of its name, a Court of Equity would have compelled it to allow such use on proper terms.

Nor was the judgment in the separate suit of *Birdsall* v. *Hyde, for money lent*, an extinguishment of his liability upon the note. If that suit had been upon the note, instead of the original advance, the doctrine contended for by the defendant's counsel would have applied. The judgment, in that case, would have been a bar to any subsequent suit against Hyde upon the note; and of course against his co-defendants, who could be charged only jointly with him. The case of *Robertson* v. *Smith*, (18 John. 459,) would then have applied with decisive force in favor of the defendants.

But in *Drake* v. *Mitchell*, (3 East, 251,) it was held that where one of three joint covenantors gives a bill of exchange for part of the debt secured by the covenant, on which bill judgment is recovered, *such judgment is no bar to an action of covenant against the three*. Grose, J. says, "the

note or bill, not having been accepted as satisfaction for the debt, could only operate as a collateral security; and though judgment has been recovered on the bill, yet not having produced satisfaction in fact, the plaintiff may still resort to his original remedy on the covenant."

In *Chipman* v. *Martin*, (13 John. 241,) this Court decided that a judgment on a covenant for the payment of rent, is not, without actual satisfaction, an extinguishment of the rent; and the lessor may, notwithstanding the judgment, distrain for the same rent, for which the judgment was obtained. It was held to be a case of concurrent remedies, where the party may pursue all, until satisfaction is produced. It was likened to the case of a bond and mortgage, in which a recovery upon the bond will not preclude the mortgagee from bringing his action of ejectment, and recovering possession of the land. The same principle is recognized and illustrated in *Bantleon* v. *Smith*, (2 Bin. 146.) In *Day* v. *Leal*, (14 John. 404,) it was held that a collateral security of a higher nature, (as a bond and warrant of attorney,) executed by one of the makers of a note, on which judgment has been entered, did not, as long as the judgment was unsatisfied, extinguish the original contract.

If Hyde was individually liable to Birdsall, for money lent, then the note in question was a collateral security, and the judgment upon the original cause of action without satisfaction, is no bar to an action on the note.

Nor is the fact of Birdsall's prosecuting and obtaining judgment against Hyde, individually, for money lent, evidence that he advanced the money upon his credit, and not upon the note. Hyde was the individual with whom the transaction took place. It was natural for Birdsall to call upon him for payment in the first instance, if he supposed he had a right to resort to him individually.

Upon the whole case, therefore, I am of opinion the plaintiffs are entitled to judgment.

Judgment for the plaintiffs.