Reese J.
delivered the opinion of the court,
We consider the present case as submitting to our determination this general question, is one who becomes endorser upon a note for the accommodation of the maker, with a view to aid him in his business and to sustain his credit, and without enquiry or restriction as to the use to be made of it, liable to a holder, who received it from the maker as a security *426 for existing liabilities? This question is answered in the affir- . , , , ,, i- ivr -tr i • i c by the present chancellor of New York, in the case of Grandin vs. Le Roy, 2 Paige’s Ch. Rep. 510, in which he says, that if the complainants in the case “lent to F their endorsement without any restriction as to the manner in which it was to be used and without any inquiry, he had a right to use it in the way he had done, to pay or secure an antecedent debt, or to sustain his credit in any other way which was not illegal,”
The chancellor in that case did not think that “the facts raised the question, whether an accommodation note made and endorsed for a particular purpose, and afterwards negotiated for another purpose to a third person with notice, or in payment or security for an antecdent debt, can be recovered against the endorser.” The chancellor to sustain the principle, determined in this case, refers to the cases of the Bank of Rutland vs. Buck, 5 Wend. 66, and the Bank of Chenango vs. Hyde, 4 Cow. Rep. 566. In the former of those cases, the note was made by Spear and Everett, and signed by Buck as surety, payable to the bank; it was made to enable Spear and Everett to raise money for their own accommodation. Upon |ts being offered at the bank for discount, the bank refused to discount it, and it vyas subsequently and before it was due, delivered over to ETonse and others, as collateral security for the payment of a judgment in their favor against Spear & Everett. The suit was brought in the name of the bank, but for the use of Honse and others. It was objected that the object for whice the note was made, being to raise money from the bank, and that object having failed, it ought to have been returned to the surety. It was admitted, that if the bank refused to advance the money, and a third person had done so, as in the 'case of the Bank of Chenango vs. Hyde, 4 Cow. Rep. 567, the surety would have been bound, as the substantial object, the raising of money, would have been obtained. It was further objected, that the note was not received in the ordinary course of commercial business, and so as to be governed by the law merchant. But Ch. J. Savage, delivering the opinion of the court says, “ L can see no well formed objection to a recovery upon this note. It was drawn *427 for the purpose of raising money for the accommodation of the * ^ ^ two makers, Spear & Everett, who have had the benefit of it.” He relies upon the case of Powell vs. Waters, 17 John. Rep. 176, and Chenango Bank vs. Hyde, as sustaining the case, and distinguishes it from the case of Woodhall vs. Holman, 10 John. Rep. 231, and the case of Skelding vs. Hoight, 15 John. Rep. 274, upon the ground that a fraud was committed in putting the note in circulation in those cases;” and he adds, here had the plaintiffs obtained a discount at the bank, they might have paid the money to Honse & Co. and Buck’s liability would have been the same, his situation is not changed, nor is there any fraud.”
Without further citation of cases, we think that upon the authority of the two cases above referred to, and those relied on to sustain them, so consonant to reason and to the objects and principles of commercial law, we too may answer the question with which this opinion commences, in the affirmative.
It is not denied, indeed it is admitted* that one who becomes endorser of a note for the accommadation of the maker, in the conduct of his business and to sustain his credit, without restriction or enquiry as to the use of the note, would be liable to the holder, who might receive it in payment of existing debts, or as a security for.existing liabilities, if he had assented to such use of it. But does he not assent to this or any other use of it, lawful and necessary to the accommodation and credit of the maker, when he endorses it for his benefit generally, and without reference to any end more special, than that with it he might raise money to sustain credit? We certainly think him as much bound as if he had given his express assent. In this case, as in the that of the Bank of Rutland vs. Buck, it may be remarked, that if the money had been raised upon the note endorsed by Lytle, and the responsibility of Kimbro to Ensley extinguished by means of it, the liability of Lytle would have been just the same. His situation would not have been changed.
But it is contended that where one endorses a note for the general credit and accommodation of the maker, without restriction as to the purpose for which it may be used, still there is *428 a restriction arising from the operation of the law merchant, which limits the responsibility of such endorser to the claim up0n p,;m 0f that holder only, who has received the note in the due course of commercial transactions, that is in other words, who has given his money for it, his goods or bis credit, at the time of receiving it, or who then on account of it, sustained some loss or incurred some liability. To sustain this position much elaborate argument has been used, and many authorities, insisted upon as relevant have been cited. We deem none of them as resting upon grounds which will sustain the purpose for which they are relied on. They are of that class, where the note having been stolen or found, or fraudulently obtained, or fraudulently put into circulation, and the holder, innocent though he rnay have been, has received it, not in due course of trade as above explained, but as payment or pledge for a pre-existing debt or liability. Such was the great case of Bay vs. Coddington, 20 John. Rep. 637, so fully discussed and so well considered, which has carried the restrictions upon the negotiability of commercial paper to a point, where this court is willing to carry it and where it is disposed to leave it. Such also are the subsequent cases of Wardell vs. Honell, 9 Wend. R. 170: Rose vs. Brotheson, 10 Wend. R. 85: Kosson vs. Smith, 8 Wend. R. 637: Clovell vs. The Tradesman’s Bank, 1 Paige’s Rep. 131. In these cases, in general, there was some equity as between the original parties, arising upon the ground of fraud or other cause, which stood in the way of the holder, in collecting the note, because he had not received it in the due course of trade. But in this case as between the makers and the holder, the note was valid and founded on good consideration, and what equity, as it has been called, against the plaintiff, has Lytle, who endorsed the note for the credit of the makers to sustain them in their business, without enquiry or restriction as to its use, because they chose to give it to the plaintiff to secure him for his responsibilities in their behalf? We think he is not in the attitude in this transaction to enable him to resist the claim of the plaintiff, and thinking so on the general , ground which we have stated, it is not necessary to look into the agreement between the makers of the note and (he plain *429 tiff, touching the endorsement by the latter of Shute’s note, for the purpose of enquiring whether the plaintiff did not at the time of receiving the note sued on, give for it his credit and incurred a new liability.
Upon the whole, we think that the judgment of the circuit court is erroneous, that it must be reversed, and a new trial of the cause be had, when the law will be charged conformably' to this opinion.
Judgment reversed.