## PERRY *v.* ARMSTRONG.

The liability of an accommodation indorser is not affected by the makers transferring the note directly to their creditor in payment of their debt, instead of obtaining the money to be used in their business by a discount at a bank, as was the original purpose.

A composition deed, by which the plaintiffs, to whom the note in question was transferred, agreed to receive a certain per cent of all debts due from the makers of the note, in full discharge of the same, to be paid at a time beyond the maturity of the note, operates as an extension of the time of payment, and discharges the indorser.

Proof of a parol agreement, made at the execution of such composition deed, that it should not embrace the note, is inadmissible, upon the ground that it contradicts the written instrument, and, also, that such an agreement would be a fraud upon the other creditors, and void.

THE writ in this suit was dated September 16, 1856, the

action being assumpsit against the defendant, as indorser of the following promissory note:

"$1500. TROY, December 9, 1854.

Three months after date, we promise to pay to the order of P. Armstrong, fifteen hundred dollars, value received, at the State Bank, Boston, Mass.

E. ARMSTRONG & Co."

The signature and indorsement of the note not having been denied, the plaintiffs produced the note, and offered evidence tending to show a demand of payment upon the makers on the 12th of March, 1855, and due protest and notice to the defendant, as indorsee, and rested their case.

The defendant then offered in evidence a deed, executed by the plaintiffs and others, as creditors of the makers of the note, of which the following is a copy:

" To all to whom these Presents shall come: We, whose names are hereunto subscribed and seals affixed, creditors of E. Armstrong & Co., composed of Ethan Armstrong and Jerome B. Armstrong, send greeting: Whereas the said E. Armstrong & Co. are justly indebted to us, their several creditors, in divers sums of money, which, by losses and misfortunes, they are unable to pay in full; and therefore we, the said creditors, have resolved to undergo a certain loss, and to accept of forty cents for every dollar by them owing to us, to be paid, the one half in one and the other half in two years; or thirty cents for every dollar by them owing to us, to be paid in six months, to be in full satisfaction and discharge of our several and respective debts: Now, know ye, that we, the said several and respective creditors of the said E. Armstrong & Co., for ourselves and our respective legal representatives, do hereby covenant, promise, compound and agree to, and with the said Ethan Armstrong and Jerome B. Armstrong, by these presents, that we will severally and respectively accept, receive, and take of and from the said Ethan

and Jerome B., for each and every dollar they owe us, the sum of forty cents, to be paid, the one half in one year and the other half in two years, without interest, or the sum of thirty cents, payable in six months, without interest, in full discharge and satisfaction of our respective debts : we to designate, opposite our names, which sum we elect to take. In witness whereof we have hereunto set our hands and seals, this 23d day of January, 1855."

The defendant also offered evidence tending to show that on or about the 9th day of December, 1854, the makers of the note, who were then doing business at Troy, in the State of New-York, transmitted said note to the defendant, their brother, at Walpole, N. H., where he then resided, with a request that he would indorse it, and obtain the money on it for them to use in their business, for their accommodation; that he accordingly indorsed the note, and having failed to procure the money on it in his neighborhood, at the banks, he returned it to the makers, who were then in good credit; that the makers laid the note away and made no attempt to get it discounted, and took no account of it as any part of their available assets; that on the 20th day of the same December, the makers of the note suspended payment, and afterwards negotiated with their creditors for a settlement of their affairs, which negotiation terminated in the execution of the above mentioned deed; that a large number of the creditors of said E. Armstrong & Co. signed said deed, and, among others, the plaintiffs. The defendant's evidence tended to show that the plaintiffs executed said deed about the first of February, 1855, and at the same time received of the makers the note in question, the object being to secure to the plaintiffs an advantage over the other creditors who might execute the deed. And the defendant contended that, under these circumstances, the note was void in the hands of the plaintiffs. The defendant's evidence also tended to show that the defendant had

no interest in the note, but indorsed it merely for the accommodation of the makers, and that this was known to the plaintiffs when they took it.

The plaintiffs denied that the note was received by them at the time of their executing said deed, and offered evidence tending to show that they received the note of the makers about the first of January, 1855, before the date of said composition deed, not knowing that any such deed was in contemplation, and entirely independent of it, and without any reference to that or any other arrangement between the makers of said note and their other creditors; that at this time the said E. Armstrong & Co. were owing the plaintiffs some $2700, a part of which was for goods sold upon commission, and for borrowed money, and that it was agreed between them that a certain part of this claim (about $1600 in all), should be considered and treated as "confidential," or "preferred," and that this note was turned out to the plaintiffs in part payment of this preferred claim, while the balance, not considered as preferred, was left at that time unprovided for; that at this time E. Armstrong & Co. offered to the plaintiffs other securities and property, such as debts due them in Vermont, real estate and store goods, besides the note in question, but that the plaintiffs, upon inquiry of persons acquainted with the defendant, and learning that he was perfectly responsible, chose this note, and it was arranged that the balance of the plaintiffs' preferred claims should be paid in goods from the store of E. Armstrong & Co.; that some few weeks after this, about the first of February, the plaintiffs executed the composition deed aforesaid, it being understood and agreed by the parties (the plaintiffs and E. Armstrong & Co.) at the time of its execution, that only the residue of the plaintiffs' claim which remained after deducting the confidential or preferred portion, was to be compounded in that way. It appeared that said Armstrong & Co. had never paid to the plaintiffs either the

Perry *v.* Armstrong.

thirty per cent or the forty per cent, according to the terms of said agreement, upon the amount thus agreed to be compounded, and the plaintiffs contended that, under these circumstances, the plaintiffs could recover upon this note.

The defendant requested the court to instruct the jury (1.) " That if the note in question was received by the plaintiffs before the execution of the composition deed, it was a debt from E. Armstrong & Co., which would be included in the composition deed, and that the deed would be such an agreement to extend the time of payment as would discharge the indorser:" (2.) Also, "that if the note in question was received by the plaintiffs before the date of the composition deed, it was a debt due from E. Armstrong & Co. which would be included in the composition deed, and that the deed would be such an agreement to extend the time of payment as would discharge the indorser:" Also, (3.) " That the effect of the deed, in that particular, cannot be varied by parol testimony." This the court declined to do, but instructed the jury, (1.) that if they should find that the plaintiffs received said note at the time they signed said deed, with the design and for the purpose of securing to themselves an advantage over the other creditors of E. Armstrong & Co., who should sign said deed; or, if with the same design and for the same purpose the plaintiffs received said note at any time prior to their executing said deed, or prior to its date, with any understanding that such deed was to be made and executed by the plaintiffs and such other creditors of said Armstrong & Co. as should sign the same, then the plaintiffs could not recover on this note; but (2.) if the jury should find that this note was received by said plaintiffs before the date of said deed, and under the arrangement claimed by the plaintiffs to have been made, and without knowing that such deed was in contemplation, and with-

out any reference to it in any way, they might return their verdict for the plaintiffs.

The defendant excepted to the last mentioned instructions to the jury, and also because the court declined to instruct the jury, as requested by him. The jury returned a verdict for the plaintiffs, which the defendant moved to set aside.

*Vose*, for the defendant.

1. The note in suit was the debt of E. Armstrong & Co., on which the defendant could only be charged by proper demand on the maker and notice to the indorser.

2. The note was originally indorsed by the defendant and the liability incurred for the purpose of enabling E. Armstrong & Co. to raise money to use in their business, and not for the purpose for which it was used. The defendant indorsed the note when the makers were in good credit, to help them in their business. The plaintiffs took the note when they knew of the embarrassment of E. Armstrong & Co.; they took it under circumstances, as the case shows, which in law amount to a notice that the makers were using it for purposes not contemplated by the indorser. *Archer* v. *Hudson*, 7 Beav. 551; *Bonser* v. *Cox*, 6 Beav. 110; *Hodgson* v. *Hodgson*, 2 Keen 704.

3. The composition deed being under seal, was a binding agreement to give time to the makers, and discharged the indorser. *Stickney* v. *Stickney*, 21 N. H. 613; *Vyner* v. *Hopkins*, 6 Jur. 889; *Calvert* v. *London Dock Company*, 2 Keen 638; *Clark* v. *Henty*, 3 Y. & Coll. 187; *Eyre* v. *Bartop*, 3 Madd. 221; *Bank of Ireland* v. *Beresford*, 6 Dow 233; *Samuel* v. *Howarth*, 3 Merrivale 272; *Boultbee* v. *Stubbs*, 18 Ves. 20; *Ex parte Wilson*, 11 Ves. 410; *Wright* v. *Simpson*, 6 Ves. 734; *Rees* v. *Beresford*, 2 Ves. Jr. 543; *Fadyer* v. *Ford*, 2 Ves. Jr. 539; *Nisbet* v. *Smith*, 2 Bro. C. C. 579; 3 Paige Ch. 614.

4. The alleged agreement to except this debt from the

operation of the deed is of no· effect. Because (1.) it is not in writing; (2.) it is not expressed in the deed of release; *Ex parte Glendenning,* Buck 517; *Boultbee* v. *Stubbs,* 18 Ves. 20; (3.) it was in fraud of the other creditors. *Ex parte Sadler & Jackson,* 15 Ves. 52; *Mawson* v. *Stock,* 6 Ves. 300; *Jackman* v. *Mitchell,* 15 Ves. 581; *Leicester* v. *Rose,* 4 East 374; *Cullingworth* v. *Loyd,* 2 Beav. 385; *Horton* v. *Riley,* 11 M. & W. 492; *Brick* v. *Cole,* 4 Sandf. S. C. 79; *Mallalieu* v. *Hodgson,* 5 L. E. R. 279; *Patterson* v. *Boehm,* 4 Beav. 507; *Browne* v. *Stackpole,* 9 N. H. 480.

*Wheeler & Faulkner,* for the plaintiffs.

The jury found that the transactions in relation to the note were prior to the date and execution of the composition deed, and had no connection with it or reference to it, and that the note was received by the plaintiffs on payment of a debt which the parties had agreed to treat as preferred; the plaintiffs relying upon the endorser, whom they knew to be good, and not upon the makers, who had failed. It is not, then, to be presumed that the plaintiffs deliberately undertook to release this claim for one third of the amount due.

Although the instructions of the court were not in the form requested by the defendant, and did not go so far in regard to the effect of the execution of the deed, they did, in fact, cover the whole ground that was open for the consideration of the jury, and were correct. If the plaintiffs· elected to rely upon the ·endorser, and to treat only the balance of their claim as a debt against Armstrong & Co., this was not a fraud upon the other creditors, nor an injury to the defendant. The plaintiffs stood in no better position than other creditors, and no fraud was either perpetrated or intended. The principle which governed the case of *Trumbull* v. *Tilton,* 21 N. H. 128, does not apply to this case.

On the question whether the note was included in the composition deed, the surrounding circumstances may be shown in determining the construction of the instrument in that particular. *Webster* v. *Atkinson*, 4 N. H. 21.

BELLOWS, J. The first question that arises in the case is this: Was the note originally good in the hands of the plaintiffs, and binding upon the defendant?

The case of *Cross* v. *Rowe*, 22 N. H. 77, is decisive upon this point. There the note was given to the plaintiff, and signed by the defendant as surety, to pay for a horse sold by the plaintiff to the principal. It was made payable to a bank, with the purpose of having it discounted there; but the bank having declined to discount it, the plaintiff kept it, and obtained the transfer of it by the endorsement of the bank, though after the surety had notified the bank not to discount or endorse it. It was held that the plaintiff might recover.

In the case before us, the note was endorsed by the defendant, with the view of raising money for the principals to use in their business, but failing to do it at Walpole, he sent it to the principals, with his endorsement remaining, and it appears that the principals retained the note until after they suspended payment, on the 20th of December, 1854, and about January 1, 1855, according to the plaintiffs' evidence, and about February 1, 1855, according to that of the defendants, the principals sold the note to the plaintiffs in part payment of their debt to them. This might well be considered as in accordance with the purpose of the defendant, to enable the principals to raise means to use in their business; and whether it was by raising the money and paying it to their creditors, or by passing it directly to some of the creditors, could make no difference with the defendant. So the return of the note to them with his endorsement implies an authority to use it; and the fact that the plaintiffs knew the defendant to be an accommo-

dation endorser could not affect 'the question, neither could the suspension of the principals affect the transfer. *Elliott* v. *Abbot*, 12 N. H. 549; *Bank of Chenango* v. *Hyde*, 4 Cow. 567; *Powell* v. *Waters*, 17 Johns. 176; *Bank of Newbury* v. *Rand*, 38 N. H. 166.

What, then, was the effect of the composition deed? It was an agreement under seal, and upon sufficient consideration, to receive of Armstrong & Co. forty per cent of all the debts due from them, one half in one and the other half in two years, or thirty per cent in six months, in full satisfaction and discharge of the debts. The instrument bears date January 23, 1855, and the note in question would be due March 12, 1855; so that the time of payment of the amount stipulated in the deed was beyond the maturity of the note. The deed in its terms embraced all the debts of Armstrong & Co. to the plaintiffs, whether then due or not, and the note in question was included by the terms of the deed; and it was not competent to prove a parol agreement, which we understand is meant by the case, that the note should not be included; for that would be to contradict the deed. Beside, such an agreement, whether verbal or written, being a secret stipulation by which it was sought to place the plaintiffs in a better situation than the other creditors, would be a fraud upon them, and void.

The case of *Trumbull* v. *Tilton*, 21 N. H. 129, is decisive on this point, and the general principle has, in fact, been for a long time established. The endorser of a bill or note is regarded in the light of a surety, and if the holder, by a valid agreement, gives time to the maker or acceptor, the endorser will be discharged. *Chitty on Bills* 408–412; *Clark's Exrs.* v. *Moles*, 3 B. & P. 363. The contract of the endorser, like that of a surety or guarantor, is to answer for the default of the one who, as principal, is bound to pay, or perform the duty; and in whatsoever form his undertaking may be, he will be discharged by a change of

the contract to his prejudice, and without his consent. *Wheat* v. *Kendall*, 6 N. H. 504; *Bank* v. *Brown*, 12 N. H. 320; *Savings Bank* v. *Colcord*, 15 N. H. 119; *Watriss* v. *Pierce*, 32 N. H. 574; *Rees* v. *Berrington*, 2 Ves. Jr. 540.

The only remaining question is, whether this contract had the effect to extend the time of payment of the note. By the terms of the deed, the plaintiffs were bound to discharge the whole claim on receiving a certain per cent of the amount within a period beyond the time the note, by its terms, became due; and we think that it must necessarily operate as a binding contract to extend the time of payment, otherwise it would avail nothing, and the creditors could at once collect their whole debts. Ch. Bills 408, 414; *English* v. *Darley*, 2 B. & P. 61; *Gould* v. *Robeson*, 8 East 376; *Rhode* v. *Proctor*, 4 B. & C. 517.

The verdict must, therefore, be set aside and a
*New trial granted.*