BENJAMIN v. ROGERS.

*(Supreme Court, General Term, Fourth Department. July 1, 1890.)*

1. ACCOMMODATION NOTE—USURY.
    The fact that an accommodation note at a legal rate of interest was sold a day or two after its date by the principal debtor for its face value, and by mistake or inadvertence no allowance was made for the interest then accrued, did not render the note usurious.
2. SAME—LIABILITY OF SURETY.
    Where the sureties upon an accommodation note payable to the payee or bearer supposed, when they signed it, that it was to be delivered to the payee, and the money upon it obtained from her, but there was no agreement to that effect, the fact that the principal debtor sold it to another did not constitute a diversion thereof; and the fact that the buyer, who paid full value, knew that they signed with that expectation, did not affect his *bona fides*, nor his right to recover from them.

Appeal from special term, Cortland county.

Action by Horace Benjamin against Henry L. Rogers, as executor of the last will and testament of Hiram Crandall, deceased, upon a promissory note. Verdict at the Cortland circuit for plaintiff. A motion for a new trial was made upon case and exceptions at a special term at Binghamton, which was denied. Judgment was entered in Cortland county for plaintiff. The note read as follows:

"$4,000. Jointly and severally we promise to pay Nellie Petit, or bearer, four thousand dollars, with use, one year from date, for value. Dated January 5, 1880.                    LEMAN CALKINS.

"CALVIN L. HATHAWAY.

"HIRAM CRANDALL, as surety."

At the close of the evidence the defendant asked the court to hold as matter of law "that this note was not received by the plaintiff in the regular

course of business." The defendant also asked the court to allow the defend-ant to go to the jury—*First*, "on the question as to whether there was any re-striction of the purpose of which the note was made; and, *second*, whether the plaintiff did or did not have notice of the restriction; *third*, whether there was a diversion of the note." The court refused, and the defendant ex-cepted. Thereupon the court "declined to hold that the note was not received in the regular course of business." To that the defendant excepted. The de-fendant "then asked to submit to the jury the question whether the note in suit was received in the regular course of business; and also to submit to the jury the question whether the plaintiff is a *bona fide* holder without no-tice, claiming that he was not, and that he had notice;" and the court there-upon ruled as follows: "I have decided that he did have notice, and as the evidence now stands I should say to the jury as a matter of law that he did have notice, and, if this note was diverted, he knew it was diverted. I hold that there is no evidence in this case that the note had been fraudulently di-verted. That is what I hold, and for the lack of that element there is no question to go to the jury upon that branch of the case." The defendant ex-cepted. The defendant then asked to go to the jury upon the question of whether there was a restriction. Thereupon the court observed: "I say there is no evidence of any restriction to submit to the jury. I do not hold whether there was in fact or not. I say so far as the evidence in this case is con-cerned there is none to disclose that there was in fact a restriction." Defend-ant excepted. The defendant then asked the court "to hold that the plaintiff obtained the note for less than the amount actually due by its terms, and that therefore it was usurious." The court refused so to rule, and the defendant excepted. The court thereupon directed a verdict for $5,780.32; and to that direction the defendant excepted.

Argued before HARDIN, P. J., and MERWIN, J.

*M. M. Walters,* for appellant. *L. B. Kern,* for respondent.

HARDIN, P. J.  1. Plaintiff's complaint alleges that the note in suit was made for $4,000, on the 5th day of January, 1880, and "that before the said note became due, and in due course of business, the said note was for value sold and delivered to this plaintiff, who is now the owner and holder thereof," while the defendant does allege in his answer that Calkins never delivered it to Nellie Petit, and that it did not have any inception "until the same was by said Leman Calkins delivered to the plaintiff in this action." It is then al-leged that it was transferred by Calkins "to the plaintiff for an amount less than the amount due upon the note, and by its terms at the time of said trans-fer." It then alleges that it was transferred upon a usurious consideration of at least $5; and it is alleged, "said transfer was void for usury, and the note is invalid in the hands of the plaintiff, and he has no right of action thereupon by reason of the same upon a contract void under the statute of usury." Under this somewhat indefinite answer no evidence was given to establish a corrupt agreement to take and receive more than lawful interest for the loan of money. The trifling interest of one day or so, which may have accrued upon the note when it was taken by the plaintiff, may not have been taken into account by the parties at the time the note was taken by the plaintiff. There is no evidence, however, to indicate the omission to consider it was by reason of a usurious corrupt agreement, or that any devise or trick was resorted to for the purpose of exacting usury. The mistake or inadvert-ence did not constitute usury, and under the pleadings and evidence the court did not err in holding that no usury was established, and in refusing to sub-mit the case to the jury in that regard. *Insurance Co.* v. *Sturges,* 2 Cow. 664; *Marvine* v. *Hymers,* 12 N. Y. 231. The learned counsel for the de-fendant calls our attention to *Marvin* v. *McCullum,* 20 Johns. 288, and upon an examination of that case we find the trial court, upon proof being given

that the defendant was an accommodation maker, who offered evidence that it was "bought at a discount from the sum due thereon at the time of the purchase, rejected the evidence which was offered to prove the note usurious;" and the court, in review of the rulings, held it was erroneous, "as the defendant offered to prove the agreement between Hudson (the purchaser) and the maker was usurious, and the note was first given to H. as security for a usurious loan." We think the case does not sustain the contention of the defendant here. We think *Hall* v. *Wilson*, 16 Barb. 554, does not sustain the defendant's position. In that case Biglow became the owner of the note upon a usurious consideration expressly agreed upon as he took the note of $120 for $115, and ALLEN, J., says at page 554: "The agreement upon which he obtained the note was usurious and void." Bundy had stolen the note, and it had no inception until he sold it to Biglow upon a usurious agreement, and the plaintiff had no better rights in the note than Biglow acquired by such usurious agreement, and therefore could not recover. Under the facts disclosed in that case, "the note never had an inception so as to enable any person to become a *bona fide* holder of it." In *Eastman* v. *Shaw*, 65 N. Y. 528, DWIGHT, C., approves of the position just stated when considering a case where the note was sold at a usurious rate, and the note was therefore void for usury. We think there was no evidence to show any reservation beyond the legal interest upon a mutual agreement between the parties, and that the trial judge properly disposed of the question as to the alleged usury. *Matthews* v. *Coe*, 70 N. Y. 242; *Guggenheimer* v. *Geiszler*, 81 N. Y. 293; *Morton* v. *Thurber*, 85 N. Y. 556; *Bevier* v. *Covell*, 87 N. Y. 54.

2. Defendant's evidence of what took place between the plaintiff and Leman Calkins when the plaintiff became the owner of the note in suit rests largely upon the admissions made by plaintiff in his interviews with the defendant and his attorney and another witness. Considering the same in the most favorable light allowable, it appears that the plaintiff parted with value when he became the owner of the note. One of the witnesses says that the plaintiff stated that he got the note "the next day, or the second day after it was dated;" and that the plaintiff stated that he paid $4,000 for it; that the $4,000 was "made up in part of past-due paper of Calkins, and part in money, and he couldn't tell the exact amount of the notes and the exact amount of the money that was delivered over at the time to Calkins, but he thought it was about half and half." It clearly appears that whatever old notes represented "one-half" thus paid over were given up and surrendered, and the other half was paid in cash for the note in suit. Such surrender and payment by the plaintiff entitled him to be considered a *bona fide* holder for value of the note taken before maturity. *Coddington* v. *Bay*, 20 Johns. 636; *Insurance Co.* v. *Church*, 81 N. Y. 218; *Lombard* v. *Bank*, 4 N. Y. Supp. 740; *Oates* v. *Bank*, 100 U. S. 239. It may be assumed that the note was executed by the makers when they had a supposition that Calkins was to take it to Nellie Petit, and obtain the money upon it, and that she declined to advance the money upon it when it was offered to her. And it may be assumed that information was given to the plaintiff at the time he took it that such had been the hope and expectation of the parties. But the note was payable to her, or to bearer, and in that condition was executed by all the makers. There is abundant evidence to indicate that it was the expectation of all the makers when the note was executed that Calkins would receive the avails of the note. There is nothing in the case to show any agreement that there was an express restriction of the mode in which the note should be used by Calkins. It was not signed to take up a prior note on which any of the makers were liable. It does not fall within the case of *Comstock* v. *Hier*, 73 N. Y. 269; nor the case of *Ayres* v. *Doying*, 42 Hun, 632. In the latter case there was an agreement with the defendant that the note should be used "to protect a creditor of her contractor," and after such agreement the plaintiff took the note "thus restricted and

diverted only as collateral to, and in settlement of, an antecedent debt." We find nothing in the evidence in the case before us to indicate an express agreement that the note in suit should be used with Mrs. Petit only, nor that the intestate was especially restricted in having the note negotiated to Mrs. Petit, or that it was a fraud upon the rights of the intestate to negotiate the same to the plaintiff. In *Bank* v. *Penfield*, 69 N. Y. 502, it was held, viz.: "Where a promissory note is made for the accommodation of the payee, but without restriction as to its use, an indorsee taking it in good faith as collateral security for an antecedent debt of the payee and indorsee, without other consideration, occupies the position of a holder for value, and can recover thereon against the maker. The precedent debt is a sufficient consideration for the transfer, and no new consideration need be shown. It is only where the note has been diverted from the purpose for which it was intended by the payee, or where some other equity exists in favor of the maker, that it is necessary that the holder should have parted with value on the faith of the note in order to enforce the same." The doctrine of *Bank* v. *Penfield*, *supra*, was reasserted in *Bank* v. *Townsend*, 87 N. Y. 8. These cases reaffirm the same doctrine stated in *Bank* v. *Neass*, 5 Denio, 336, affirmed 3 N. Y. 442; and, in connection with the doctrine, the court said in its opinion in 5 Denio that "every person who becomes a party to an accommodation note or bill does so for the purpose of giving it credit and value, and he will not be permitted to deny against a *bona fide* holder for valuable consideration that he put his name on the paper for value actually received." In *Wheeler* v. *Allen*, 59 How. Pr. 118, an indorser set up a somewhat similar defense to the one attempted here. It was overruled, and the plaintiff was held to be a *bona fide* holder. In dealing with it the court remarked: "If, however, he [the indorser] has no interest in the way in which the proceeds of the note are to be used, it is no defense to him that he was told that the note was to be discounted by a bank, though it was in fact the intention of the maker, whom he accommodated, to use the note in paying an antecedent debt, and though the note be so used." In *Bank* v. *Corey*, 1 Hill, 513, indorsers sought to defend upon the ground that their indorsement was obtained "for the purpose of enabling Borst, the maker, to get it discounted at the Albany City Bank to raise money to buy barley." The court remarked, viz.: "But it does not appear that the indorsers had any interest in having it discounted by the Albany City Bank, or that the use which Borst should make of the money was in anyway important to them," (the indorsers.) In *Montross* v. *Clark*, 2 Sandf. 118, it appeared that when the note was loaned by one brother to another the borrower told the brother he "wanted to get the note discounted at the Albany City Bank, but there was no positive agreement that it should be discounted there." In dealing with the point made, the court said, viz.: "To expose negotiable paper to the objection of a diversion from the use to which it was to be applied, an agreement as to the manner in which it was to be used must be shown. A mere intimation of the party accomodated that he 'wants or expects to get it discounted at a particular bank' is slight evidence indeed of such an agreement, especially when the note was given for the general purpose of helping him out of difficulty. Judge Story (1 Story, Bills, § 191) says: It is no defense or bar that the bill was known to the holder to be an accommodation bill between the other parties if he takes it for value *bona fide* before it has become due. The reason is, the remarks, that the very object of every accommodation bill is to enable the parties thereto, by a sale or other negotiation thereof, to obtain a free credit and circulation thereof; and this object, he says, would be wholly frustrated unless the purchaser or other holder for value could hold such a bill by as firm and valid a title as if it were founded in a real business transaction. In short, the parties to every accommodation bill hold themselves out to the public by their signature to be absolutely bound to every person who shall take the same for value to the

same extent as if that value were personally advanced to them, or on their account, or at their request." We think the fact that plaintiff had notice or information that the parties to the note supposed it was to be passed to, or discounted by, Nellie Petit does not prevent him from recovering. In dealing with a like question in *Powell* v. *Waters,* 17 Johns. 179, the court said, viz.: "If the plaintiffs knew when they received the note that it was intended to be discounted at the Bank of Newburgh, and had been refused, it would not affect them or establish any fraud." In *Bank* v. *Hyde,* 4 Cow. 573, the court said: "Nor is the validity of the note affected by the circumstance that it was drawn for the purpose of being discounted at the Bank of Chenango. It was made to raise money on. It did not change the responsibility of any of the parties to it that the money was advanced by Birdsall instead of the bank." The case of *Denniston* v. *Bacon,* 10 Johns. 198, does not aid the appellant. There was an agreement, evidenced by a letter, which was clearly violated, and the note "was not discounted on the terms stated in the letter." See opinion of SUTHERLAND, J., 4 Cow. 573. As we have before stated, we think the evidence falls short of a defense. It does not establish a restrictive agreement. The slight evidence bearing upon the subject is indefinite and uncertain, and not sufficient to overcome the terms of the note, and the presumption arising upon its production. In *Van Duzer* v. *Howe,* 21 N. Y. 538, DENIO, J., said: "The maker who, by putting his paper in circulation, has invited the public to receive it of any one having it in possession with apparent title is estopped to urge the actual defect of title against a *bona fide* holder." These views lead us to the conclusion that the trial judge committed no error in directing a verdict for the plaintiff for the amount due upon the note in suit. Judgment and order affirmed, with costs.